No. 23-3764

IN THE
# United States Court of Appeals for the Ninth Circuit

GLEN MORGAN,

*Plaintiff-Appellant,*

v.

TWITTER, INC.,

*Defendant-Appellee.*

On Appeal from the
United States District Court for the
Eastern District of Washington
Case No. 2:22-cv-00122-MKD
Hon. Mary K. Dimke

## ANSWERING BRIEF OF DEFENDANT-APPELLEE TWITTER, INC.

Aravind Swaminathan
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, WA 98104
(206) 839-4300
aswaminathan@orrick.com

*Counsel for Defendant-Appellee Twitter, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, X Corp., as successor in interest to named defendant Twitter, Inc., through the undersigned counsel, hereby states that Twitter, Inc. has been merged into X Corp. and no longer exists. X Corp. is a privately held corporation. Its parent corporation is X Holdings Corp. No publicly traded corporation owns 10% or more of the stock of X Corp.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Aravind Swaminathan*
Aravind Swaminathan
*Counsel for X Corp., successor in interest to named Defendant-Appellee Twitter, Inc.*

i

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT...................................................................i

TABLE OF AUTHORITIES...............................................................iv

INTRODUCTION....................................................................................1

JURISDICTIONAL STATEMENT .....................................................4

STATEMENT OF THE ISSUES.........................................................4

STATEMENT OF THE CASE ............................................................5

SUMMARY OF ARGUMENT ..........................................................18

STANDARD OF REVIEW.................................................................24

ARGUMENT .........................................................................................25

I.    This Court Should Affirm The District Court's Denial of
Plaintiff's First Motion To Remand. ...............................25

    A.    Section 1446(b)(1) imposed no limitation on Twitter's
ability to remove..................................................26

    B.    Section 1446(b)(3) imposed no limitation on Twitter's
ability to remove..................................................31

    C.    Plaintiff's original complaint and FAC conferred Article
III standing...........................................................34

II.    The District Court Did Not Abuse Its Discretion In Denying
Plaintiff's Motion For Leave To File A Second Amended
Complaint. ...........................................................................35

    A.    The District Court did not abuse its discretion in
concluding that Plaintiff's proposed amendment was
futile. .....................................................................37

    B.    The District Court did not abuse its discretion in
concluding that Plaintiff unduly delayed in seeking
leave to amend. ....................................................38

    C.    Plaintiff's motion for leave to file a second amended
complaint was made in bad faith..........................42

D.    The District Court did not abuse its discretion in concluding that Plaintiff's proposed amendment would result in undue prejudice. ..................................... 45

III.  The District Court Properly Denied Plaintiff's Second Motion to Remand ........................................................................ 47

A.    The District Court properly concluded that it had Article III jurisdiction based on Plaintiff's allegations that Twitter sold his telephone number in violation of Section 140. ..................................................................... 48

B.    Alternatively, the District Court properly concluded that it had Article III jurisdiction based on Plaintiff's allegations that Twitter wrongfully obtained his telephone number in violation of Section 140. ..................... 51

IV.  The District Court Properly Granted Twitter's Motion To Dismiss The FAC Under Rule 12(b)(6). ............................... 55

A.    Plaintiff waived his challenge to the District Court's order granting Twitter's motion to dismiss, by failing to address two independent grounds that the District Court gave for dismissal. ..................................... 56

B.    This Court should affirm the District Court's second independent ground for dismissal because a telephone number alone is not a "telephone record" under Section 140. ..................................................................... 58

C.    This Court should affirm the District Court's third independent reason for dismissal because Plaintiff's FAC failed to satisfy Rule 9(b). ............................... 63

V.   The District Court Properly Granted Twitter's Motion To Dismiss Under Rule 12(b)(6) With Prejudice. ............... 64

CONCLUSION ...................................................................... 67

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmerisourceBergen Corp. v. Dialysist W., Inc.,*
465 F.3d 946 (9th Cir. 2006)................................................. 38, 41, 46

*Ariz. State Legislature v. Ariz. Indep. Redist. Comm'n,*
576 U.S. 787 (2015)........................................................ 49, 50

*BankAmerica Pension Plan v. McMath,*
206 F.3d 821 (9th Cir. 2000)............................................... 50

*Broadway Grill, Inc. v. Visa Inc.,*
856 F.3d 1274 (9th Cir. 2017)............................................. 44

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011)............................................. 36

*Carvalho v. Equifax Info. Servs., LLC,*
629 F.3d 876 (9th Cir. 2010)............................................. 31, 32

*Chafin v. Chafin,*
568 U.S. 165 (2013)........................................................ 49

*Chambers v. C. Herrera,*
78 F.4th 1100 (9th Cir. 2023) ............................................. 24

*Chodos v. W. Publ'g Co.,*
292 F.3d 992 (9th Cir. 2002)............................................. 39

*Christian v. Mattel, Inc.,*
286 F.3d 1118 (9th Cir. 2022) ............................................. 40

*Coal. to Defend Affirmative Action v. Brown,*
674 F.3d 1128 (9th Cir. 2012)........................................... 24, 64

*In re Det. of Williams,*
55 P.3d 597 (Wash. 2002) ................................................. 59

iv

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021) ............................................................ 31

*Ecological Rts. Found. v. Pac. Gas & Elec. Co.*,
713 F.3d 502 (9th Cir. 2013) ...................................................... 65, 66

*Eichenberger v. ESPN*,
876 F.3d 979 (9th Cir. 2017) ................................................ 52, 53, 54

*Elcon Constr., Inc. v. E. Wash. Univ.*,
273 P.3d 965 (Wash. 2012) (en banc) ............................................... 64

*Gonzalez v. JPMorgan Chase Bank, N.A.*, No. 20-55137,
2023 WL 195545 (9th Cir. Jan. 17, 2023) ........................................ 38

*Gray v. Twitter, Inc.*,
No. 2:20-cv-01389 (W.D. Wash.) ............................................ *passim*

*Griggs v. Pace Am. Grp., Inc.*,
170 F.3d 877 (9th Cir. 1999) ............................................................ 45

*Harris v. Bankers Life & Cas. Co.*,
425 F.3d 689 (9th Cir. 2005) .................................................. 24, 26, 29

*Hills v. Indymac Mortg. Holdings, Inc.*,
730 F. App'x 513 (9th Cir. 2018) ...................................................... 37

*Hoang v. Bank of Am., N.A.*,
910 F.3d 1096 (9th Cir. 2018) .......................................................... 24

*Jackson v. Bank of Hawaii*,
902 F.2d 1385 (9th Cir. 1990) .................................................... 36, 45

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ....................................................................... 59

*Jordan v. Nationstar Mortg. LLC*,
781 F.3d 1178 (9th Cir. 2015) ..................................................... 33, 34

*Kendall v. Visa USA, Inc.*,
518 F.3d 1042 (9th Cir. 2008) .......................................................... 37

v

*Kuxhausen v. BMW Fin. Servs. NA*,
    707 F.3d 1136 (9th Cir. 2013) ..................................................... *passim*

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ................................................................. 42

*MacKay v. Pfeil*,
    827 F.2d 540 (9th Cir. 1987) ................................................. 22, 56, 57

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ............................................................. 47

*Ramirez v. City of Buena Park*,
    560 F.3d 1012 (9th Cir. 2009) ............................................................. 50

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) ............................................................................. 44

*Rodriguez v. AT & T Mobility Servs. LLC*,
    728 F.3d 975 (9th Cir. 2013) ................................................................. 5

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ............................................... 22, 56, 57

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
    720 F.3d 1121 (9th Cir. 2013) ................................................... *passim*

*Segal v. Rogue Pictures*,
    544 F. App'x 769 (9th Cir. 2013) ......................................................... 45

*Seila Law LLC v. CFPB*,
    140 S. Ct. 2183 (2020) ......................................................................... 50

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ............................................... 19, 35, 65

*Sorosky v. Burroughs Corp.*,
    826 F.2d 794 (9th Cir. 1987) ......................................................... 42, 45

*State v. Roggenkamp*,
    106 P.3d 196 (Wash. 2005) ................................................................. 59

*Stroh v. Saturna Cap. Corp.*,
  746 F. App'x 639 (9th Cir. 2018)..................................56, 57

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ............................................24

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)............................................... *passim*

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. &*
  *Const. Trades Dep't, AFL-CIO*,
  770 F.3d 834 (9th Cir. 2014).......................................35, 37

*United States v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) (en banc) ...........................35

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).....................................63, 64

*Warth v. Seldin*,
  422 U.S. 490 (1975)..........................................................47

*Williams v. Costco Wholesale Corp.*,
  471 F.3d 975 (9th Cir. 2006).............................................44

*Yates v. United States*,
  574 U.S. 528 (2015)..........................................................59

*Zivkovic v. S. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002)...........................................47

## Statutes

28 U.S.C. § 1291 ..............................................................4, 18

28 U.S.C. § 1332(d).................................................. *passim*

28 U.S.C. § 1441(d)........................................................20, 28

28 U.S.C. § 1446 ..................................................................28

28 U.S.C. § 1446(b)..............................................................32

28 U.S.C. § 1446(b)(1)................................................................ *passim*

28 U.S.C. § 1446(b)(3)................................................................ *passim*

28 U.S.C. § 1446(b)(a)................................................................ 31

RCW 9.26A.140 ......................................................................... *passim*

RCW 9.26A.140(1) ..................................................................... 5

RCW 9.26A.140(1)(a) ..................................................... 14, 41, 42, 56

RCW 9.26A.140(1)(b) ......................................................... 53, 56, 59

RCW 9.26A.140(1)(d) ............................................................... 63

RCW 9.26A.140(3) ..................................................................... 6

RCW 9.26A.140(5) ..................................................................... 62

RCW 9.26A.140(5)(b) ....................................................... 5, 57, 58, 60, 62

RCW 9.26A.140(b) ..................................................................... 55

RCW 9A.20.021(c) ..................................................................... 6

**Other Authorities**

Wright & Miller, 13B Fed. Prac. & Proc. Juris. § 3533.1 (3d
    ed. 2023) .......................................................................... 49

Fed. R. Civ. P. 8 ........................................................................ *passim*

Fed. R. Civ. P. 9(b)..................................................................... *passim*

Fed. R. Civ. P. 11 ...................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) .............................................................. *passim*

Fed. R. Civ. P. 15 ...................................................................... 17

Restatement (Second) of Torts § 652B..................................... 55

Article III of the U.S. Constitution ........................................ *passim*

## INTRODUCTION

This appeal is the culmination of inappropriate tactics by Plaintiff's counsel across two federal actions against Twitter.[1] Since at least 2021, Plaintiff's counsel has engaged in gamesmanship in an effort to keep the claims at issue away from the federal judges who had jurisdiction over the claims and were certain to dismiss them.

In September 2020, Plaintiff's counsel filed an identical lawsuit against Twitter in the Western District of Washington asserting claims under Washington's RCW 9.26A.140 ("Section 140"), *Gray v. Twitter Inc.* Just like the present action, *Gray* claimed that Twitter obtained and sold users' telephone numbers in violation of Section 140.

In March 2021, Magistrate Judge Brian Tsuchida issued a thorough report and recommendation (the "R&R") recommending that the *Gray* complaint be dismissed with prejudice on four independent grounds. 1-ER-4–5; SER-23–45. Following the R&R, Plaintiff's counsel made his first bid to escape federal review: He moved to certify the central questions at issue in *Gray* to the Washington Supreme Court. Before the

---

[1] Twitter, Inc. merged into X Corp. and no longer exists. The Twitter platform was renamed "X." Given the timing of the events at issue, X Corp. will refer to itself and X as "Twitter" for purposes of this appeal.

District Court in *Gray* could rule on that motion or adopt Magistrate Judge Tshuchida's recommendation, Plaintiff's counsel filed this identical lawsuit in Spokane County Superior Court, this time on behalf of Plaintiff Morgan, effectively shifting the dispute to a state court on the other side of Washington. He then sought a stay of *Gray* pending the resolution of *Morgan*. When the *Gray* Court denied his motion to stay, Plaintiff's counsel voluntarily dismissed *Gray* in an effort to avoid dismissal of the claims on the merits.

Plaintiff's counsel has been attempting to evade the federal courts ever since, seeking to deny Article III judges the opportunity to confirm that his legal theories are meritless. All of that should end here.

In May 2022, Twitter removed this case to the Eastern District of Washington, and in February 2023, Plaintiff filed a first amended complaint ("FAC") in this *Morgan* action. Plaintiff's appeal challenges the District Court's orders denying Plaintiff's first motion to remand, denying Plaintiff's motion for leave to file a second amended complaint, denying Plaintiff's second motion to remand, and granting Twitter's motion to dismiss the FAC under Rule 12(b)(6), with prejudice.

The District Court was correct in denying Plaintiff's two remand motions, and did not abuse its discretion in denying Plaintiff's motion for leave to file a second amended complaint, which had sought to *excise* allegations from the FAC in an effort to avoid federal jurisdiction. The District Court also correctly dismissed the FAC under Rule 12(b)(6) – and Plaintiff does not challenge two of the four independent reasons that the District Court gave for dismissal. This Court should affirm those rulings.

Even after filing this appeal, Plaintiff's counsel filed a motion in this Court to "remand" his own appeal to Spokane County Superior Court on the ground that this Court lacked jurisdiction over the appeal. This Court correctly denied that motion. Dkt. 14.

This is exactly the type of procedural "gamesmanship" for which the district court had repeatedly admonished Plaintiff's counsel in the proceedings below. 1-ER-35–36 (recounting how "the procedural histor[y] of this case," including the "unusual timing" of Plaintiff's filings, supported the contention that the motion was "mere gamesmanship" and "cast doubt on whether Plaintiff's counsel is [acting] in good faith"); *see also* 1-ER-19 ("[T]he above demonstrates that Plaintiff's counsel continues to take inconsistent positions on Article III justiciability,

casting further doubt on whether he is acting in good faith."). This Court should affirm across the board.

## JURISDICTIONAL STATEMENT

The District Court and this Court have Article III jurisdiction. The District Court had subject-matter jurisdiction under 28 U.S.C. § 1332(d). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Whether the District Court properly denied Plaintiff's first motion to remand on the ground that Twitter's removal was timely.

2.     Whether the District Court abused its discretion in denying Plaintiff's motion for leave to file a second amended complaint.

3.     Whether the District Court properly denied Plaintiff's second motion to remand.

4.     Whether the District Court properly dismissed Plaintiff's FAC under Rule 12(b)(6).

5.     Whether the District Court abused its discretion in dismissing the FAC with prejudice.

# STATEMENT OF THE CASE

## *Statutory Background*

Section 140 is a Washington statute that criminalizes the unauthorized sale or procurement of a "telephone record" if a person:

> "(a) Intentionally sells the telephone record of any resident of this state without the authorization of the customer to whom the record pertains; [or]
>
> (b) By fraudulent, deceptive, or false means obtains the telephone record of any resident of this state to whom the record pertains."

RCW 9.26A.140(1).

Section 140 defines the term "telephone record" to mean:

> "information retained by a telecommunications company that relates to the telephone number dialed by the customer or the incoming number or call directed to a customer, or other data related to such calls typically contained on a customer telephone bill such as the time the call started and ended, the duration of the call, the time of day the call was made, and any charges applied."

RCW 9.26A.140(5)(b).

A person thus violates Section 140's prohibition, and hence commits a class C felony (punishable by up to five years in prison), if they: (1) sell or by deceptive means obtain; (2) "information retained by a telecommunications company"; that (3) "relates to the telephone number dialed by the customer or the incoming number or call directed to a

5

customer, or other data related to such calls typically contained on a customer telephone bill." RCW 9.26A.140(3); RCW 9A.20.021(c).

The Washington Legislature enacted Section 140 to combat a specific, criminal practice known as "pretexting." 1-ER-74–75; *see also* Washington House Bill Report, 2006 Reg. Sess. S.B. 6776 (2-ER-333–34). "Pretexting" is a scheme in which a third party fraudulently poses as a telephone carrier's customer to induce the carrier to disclose the customer's call records. *See* 2-ER-333 (Bill Report explaining that pretexting involves gaining access to a person's financial or telephone records by "impersonating customers," or "cracking online accounts"); *see also* 1-ER-74 (explaining that pretexting is "the practice of presenting oneself as someone else in order to obtain private information"). As the Legislature explained, criminals who engaged in pretexting could obtain private information from telecommunications companies "about a consumer's telephone calls" and "any subscribed services," such as "the time, date, duration and destination number of each call." 2-ER-333. Section 140 was designed to stop this highly specific practice by focusing on "telephone records" – i.e., information about a customer's calling

behavior that criminals might seek to obtain from telecommunications companies.

## Factual Background

Plaintiff alleges that he is a Twitter user who provided Twitter with his cell phone number in 2016. 1-ER-38; *see* 3-ER-381, 3-ER-397. He alleges that Twitter violated Section 140 based on an announcement that Twitter made on October 8, 2019, stating that when users "provided an email address or phone number for safety or security purposes (for example, two-factor authentication) this data may have inadvertently been used for advertising purposes." 3-ER-387, 2-ER-328–29. Plaintiff alleges that the October 8, 2019 announcement shows that Twitter violated Section 140 by wrongfully procuring and then selling Plaintiff's telephone number. 3-ER-397–400.

## Procedural History

### A. Before Filing This Action, Plaintiff's Counsel Filed An Identical Case, *Gray v. Twitter*, In The Western District Of Washington.

In September 2020, Plaintiff's counsel filed an "identical" lawsuit, captioned *Gray v. Twitter, Inc.*, No. 2:20-cv-01389 (W.D. Wash.). 1-ER-4; *compare* SER-12–22 (*Gray* complaint), *with* 4-ER-660–69 (*Morgan* complaint); *see also* Opening Brief ("OB") at 7. After Twitter moved to

7

dismiss *Gray*, Magistrate Judge Tsuchida issued a thorough R&R that recommended dismissal of Gray's claims with prejudice. 1-ER-4–5; SER-23–45. Plaintiff's counsel filed objections to the R&R and separately filed a motion to certify five questions to the Washington Supreme Court. 1-ER-4–5.

## B. After Magistrate Judge Tsuchida's R&R in *Gray*, Plaintiff's Counsel Filed This Action In Spokane County Superior Court, Which Twitter Removed.

On May 3, 2022, while the objections to the R&R and motion to certify in *Gray* were still pending, Plaintiff's counsel filed this identical action on behalf of Plaintiff Morgan in Spokane County Superior Court, which was served on Twitter on April 1, 2022. 1-ER-5; *see* 4-ER-660–69. On May 19, 2022, Twitter removed this action to the Eastern District of Washington under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). 4-ER-649–52. Plaintiff moved to remand *Morgan*.

Around the same time, Plaintiff's counsel filed a motion in *Gray* to stay that case until the resolution of *Morgan*, which he argued should "now be adjudicated in state court." 1-ER-5; SER-9-10. The *Gray* Court denied that motion, SER-4–8, explaining: "Both the parties and the Court have already invested substantial resources in litigating Gray's claims in

8

this forum. Twitter's motion to dismiss and Gray's motion to certify questions to the Washington Supreme Court have both been fully briefed by the parties, and Judge Tsuchida has already issued an R&R on the motion to dismiss with objections from Gray and a response to those objections from Twitter. All of this effort had already been expended before the *Morgan* Action was filed on May 3, 2022. Gray fails to explain why litigating a new case involving virtually the same claims would conserve judicial resources rather than waste them." SER-7. Following that ruling, Plaintiff's counsel voluntarily dismissed *Gray*. 1-ER-7; SER-3.

### C. The *Morgan* Court Denied Plaintiff's Motion To Remand.

Plaintiff's first motion to remand *Morgan* initially argued that Twitter did not timely remove the case. 1-ER-6. Plaintiff then "challenged Article III standing for the first time in his Reply brief." 1-ER-6. In supplemental briefing, Plaintiff's counsel framed the *Morgan* complaint as presenting a single Section 140 claim based on the alleged "unauthorized sale or procurement of telephone records." 1-ER-25–26 (quoting 1-ER-69 n.4). He argued that this single cause of action did not entail the type of injury that would confer Article III standing.

9

While the motion to remand was pending, on February 21, 2023, Plaintiff filed the FAC in *Morgan*. 1-ER-67; 3-ER-378–404 (FAC). Twitter did not object to the amendment, so the District Court took no action at that time. 1-ER-9, 1-ER-67-68. However, as the District Court explained, the FAC "did not alter the 'Cause of Action' statement in the original Complaint. Rather, the amendments primarily supplemented or revised the factual allegations underlying that cause of action." 1-ER-9; *see* 1-ER-67-68 & n.2, 1-ER-99.

In ruling on Plaintiff's motion to remand, the District Court accepted Plaintiff's view that the FAC contained a single Section 140 claim. *See* 1-ER-25–26 (citing 1-ER-69–70, 1-ER-74–78, 1-ER-81, 1-ER-98). On May 5, 2023, the District Court denied the motion to remand, finding that the claim conferred Article III standing and that Twitter had timely removed the action. 1-ER-65–100.

### D. The District Court Denied Plaintiff's Belated Motion For Leave To File A Second Amended Complaint.

In June 2023, Twitter filed a motion to dismiss the FAC under Rule 12(b)(6). 2-ER-325–76. Ten days later, Plaintiff filed a motion for leave to file a second amended complaint to excise allegations that (in his view) gave rise to Article III standing and requested the District Court to

10

immediately remand the case. Specifically, he sought to delete his previous allegations that Twitter sold his telephone number. 2-ER-287–324. Plaintiff's counsel filed a declaration claiming that, despite having pursued those allegations against Twitter since filing *Gray* in 2020, he learned for the first time in June 2023 that the allegations lacked factual support after having a conversation with "a group of friends and acquaintances." 1-ER-60–62.

Plaintiff suggested that deleting those allegations would leave a narrower Section 140 claim – for procurement, but not sale, of telephone records – which would not entail Article III "harm." 2-ER-260. In other words, having previously framed the "unauthorized sale and procurement of telephone records" as a single Section 140 claim, *see* 1-ER-26 (citing 1-ER-69-70, 1-ER-74–78, 1-ER-81, 1-ER-98), Plaintiff now sought to treat "sale" and "procurement" as "two distinct claims" for standing purposes. 1-ER-25–28. Plaintiff urged the District Court to "remand immediately" on that basis. 2-ER-266.

Plaintiff's motion delayed the resolution of Twitter's motion to dismiss the FAC. The District Court denied Plaintiff's motion for leave to file a second amended complaint "in light of: (1) [Plaintiff's] previous

11

amendment; (2) the futility of amendment, where [Plaintiff] only intended to remove, not add, substantive allegations; (3) the prejudice [Twitter] would suffer if litigation was reset again; and (4) the undue delay that had already resulted from Plaintiff's … counsel's failure to investigate the factual basis for [his lawsuit] at an earlier time," which was inconsistent with his duties under Rule 11. 1-ER-11; *see* 1-ER-52–64.

Although the District Court declined to make an explicit finding that Plaintiff's counsel had "intentionally acted to deceive, harass, mislead, delay, or disrupt the proceedings," the Court "[took] note of the seemingly inconsistent positions that ha[ve] plagued this matter from its inception." 1-ER-63; *see* 1-ER-11. Moreover, the Court noted "the unusual timing of the instant motion which comes after an inexplicable delay of investigation and just days after Defendant sought dismissal as a matter of law." 1-ER-63; *see* 1-ER-11.

### E. The District Court Denied Plaintiff's Second Motion To Remand And Granted Twitter's Motion To Dismiss The FAC Under Rule 12(b)(6) With Prejudice.

Plaintiff's counsel then filed a renewed (second) motion to remand, arguing that, even though the District Court denied Plaintiff's motion for

leave to file a second amended complaint, it should disregard Plaintiff's allegations in the FAC as to the sale of his telephone number, and therefore remand the case to state court. 2-ER-233. While that remand motion was still pending, Plaintiff's counsel also filed a motion to certify questions to the Washington Supreme Court (2-ER-192), which he simply copied and pasted from the motion to certify he had filed in the *Gray* action in April 2021 (*see* 2-ER-110–53).

On November 22, 2023, in a consolidated order, the District Court denied Plaintiff's second motion to remand, denied Plaintiff's motion to certify questions to the Washington Supreme Court, and granted Twitter's motion to dismiss the FAC. 1-ER-3–51.

As to Plaintiff's second motion to remand, the District Court admonished Plaintiff's counsel for really raising an implicit – and improper – motion for reconsideration of the Court's order denying Plaintiff's motion for leave to file a second amended complaint. 1-ER-15. The District Court found that "[t]here is no intelligible reason why reconsideration would be appropriate, let alone required." 1-ER-19.

The District Court also cataloged the range of ways that Plaintiff had "continued" to engage in suspicious "patterns" of behavior that had

upended the litigation. 1-ER-19. For example, "Plaintiff's counsel" had taken "'inconsistent positions' on Article III justiciability." 1-ER-18–20. In addition, "Plaintiff's counsel was apparently on notice that his Subsection (1)(a) allegations [regarding the sale of telephone numbers] might have been meritless, but he did not bring that to the Court's attention while urging the Court to order early discovery." 1-ER-17. "And despite his professed concern about this delay, Plaintiff Morgan moved for leave to file the Second Amended Complaint a few weeks later, adding to the list of issues that needed to be addressed before discovery could commence." 1-ER-17.

The District Court also found that "the procedural histories of this case and *Gray v. Twitter* support Defendant's contention that [Plaintiff's motion to certify questions] is mere gamesmanship." 1-ER-17. The Court "noted Plaintiff's counsel's 'seemingly inconsistent positions' throughout the litigation to date and the 'unusual timing' of his request to further amend the complaint." 1-ER-35. "These phenomena have only continued, with Plaintiff Morgan filing the instant Motion to Remand only five days thereafter and the instant Motion to Certify on September 26, 2023." 1-ER-35. "Moreover, Plaintiff's counsel filed a similar motion

14

to certify in *Gray v. Twitter*, which was fully briefed and pending when Plaintiff's counsel voluntarily dismissed the entire case." 1-ER-36. The District Court concluded that "[t]hese patterns (1) indicate that this case would be particularly burdensome on the Washington courts and (2) cast doubt on whether Plaintiff's counsel is seeking certification in good faith." 1-ER-36.

Despite this apparent gamesmanship, the District Court considered Plaintiff's remand argument on its own terms – and rejected it. As the District Court explained, even treating the sale and procurement of telephone records as distinct claims for standing purposes, and disregarding the allegations that Twitter "sold" Plaintiff's telephone number (as Plaintiff sought), the remaining allegations that Twitter "obtained his cell phone number without his actual knowledge or consent by using deceptive, false, or fraudulent assurances of privacy" would still implicate a "substantive privacy right codified by" Section 140 and hence give rise to a sufficiently concrete injury to confer Article III standing. 1-ER-28–31.

As to Twitter's motion to dismiss the FAC under Rule 12(b)(6), the District Court gave four independent reasons for granting that motion:

15

(i) Section 140 applies only to the wrongful procurement of information from a telecommunications company, not from an individual like Plaintiff (1-ER-39–44); (ii) a "telephone record" under Section 140 encompasses only particular, expressly enumerated categories of information about a customer's telephone usage – none of which includes a customer's own telephone number (1-ER-39–44); (iii) despite bringing a claim that Twitter used false means to obtain his telephone number, Plaintiff failed to identify with particularity any statement by Twitter alleged to be false, as required by Rule 9(b) (1-ER-44–48); and (iv) even if Rule 9(b) did not apply, Plaintiff still failed to plead basic facts showing that Twitter used any false means to obtain his telephone number, as required by Rule 8 (1-ER-48–49).

The District Court dismissed the FAC with prejudice because: (i) Plaintiff did not request leave to amend in his opposition to Twitter's motion to dismiss; (ii) Plaintiff had already amended the complaint once, without complying with the requirements of Rule 15, and requested a second opportunity to amend, which the Court denied on the basis of futility, prejudice to Twitter, and undue delay; (iii) the textual inapplicability of Section 140 is not an issue that can be feasibly corrected

16

by amendment; (iv) Plaintiff's counsel has had notice of the deficiencies under Rules 8 and 9 "since the magistrate judge's Report and Recommendation in *Gray v. Twitter*, if not earlier, yet repeatedly failed to address them"; and (v) "[i]t is clear that further amendment would be futile, cause prejudice to Defendant, and result in undue delay." 1-ER-49–50.

The District Court entered judgment in favor of Twitter. 1-ER-2.

### F. Plaintiff Appealed And Then Filed A Motion To Remand His Own Appeal To Spokane County Superior Court.

Plaintiff appealed the District Court's order denying Plaintiff's first motion to remand, 1-ER-65–100; denying Plaintiff's motion for leave to file a second amended complaint, 1-ER-52–64; denying Plaintiff's second motion to remand, 1-ER-3–51; and granting Twitter's motion to dismiss the FAC under Rule 12(b)(6).

After affirmatively seeking review from this Court, Plaintiff filed a motion to "remand [this appeal] to Spokane County" on the ground that "this Court lacks jurisdiction" to hear the appeal he filed. Dkt 7.1 at 2. In response, Twitter explained that this Court both has "jurisdiction of appeals from all final decisions of the district courts," 28 U.S.C. § 1291,

and cannot remand this case to Spokane County Superior Court because Plaintiff appealed from the U.S. District Court for the Eastern District of Washington. Dkt. 12.1 at 1–2. Twitter also noted that Plaintiff's jurisdictional arguments amounted to disagreements with the merits of the District Court's decisions, and so belonged before this merits panel – not a motions panel considering truncated briefing on an accelerated schedule. *Id.* at 2, 6–8. On March 15, 2023, this Court denied Plaintiff's "motion to remand." Dkt. 14.1.

## SUMMARY OF ARGUMENT

Plaintiff's opening brief purports to challenge the District Court's: (i) May 5, 2022 order denying Plaintiff's first motion to remand, 1-ER-65–100; (ii) August 31, 2023 order denying Plaintiff's motion for leave to file a second amended complaint, 1-ER-52–64; and (iii) November 22, 2023 order denying Plaintiff's second motion to remand, 1-ER-11–31, and granting Twitter's motion to dismiss the FAC under Rule 12(b)(6), 1-ER-37–51.

Plaintiff's opening brief does not challenge the portion of the District Court's May 5, 2022 order denying Plaintiff's first motion to remand on the basis that Plaintiff's FAC conferred Article III standing.

18

*See* OB 18-22. Plaintiff's opening brief also does not challenge the portion of the District Court's November 22, 2023 order that denied his motion to certify questions to the Washington Supreme Court, 1-ER-31–37. *See* OB 18-43. Plaintiff has thus forfeited those challenges. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("Arguments not raised by a party in its opening brief are deemed waived.").

This Court should affirm the rest of the District Court's rulings across the board.

**First**, this Court should affirm the District Court's May 5, 2022 order denying Plaintiff's first motion to remand. 1-ER-65–100. Plaintiff does not contest the District Court's ruling that the original complaint's and FAC's allegations conferred Article III standing. The District Court also properly held that Twitter's removal was timely. Title 28 U.S.C. §§ 1446(b)(1) and (b)(3) impose only two 30-day limits on removal. Those limits are triggered only when the four corners of the original complaint, § 1446(b)(1), or some other "paper" provided to Twitter after receipt of the original complaint, § 1446(b)(3), make clear that the case is removable on its face. Here, neither of those conditions was met. Neither the original complaint, nor the FAC, nor any other "paper" provided to Twitter

19

showed either the size of the putative class or the amount in controversy, as would be required to establish removability, *see* 28 U.S.C. § 1441(d). Accordingly, Twitter faced no time bar on its ability to remove. The May 5, 2022 order should be affirmed.

**Second**, this Court should affirm the District Court's August 31, 2023 order denying Plaintiff's motion for leave to file a second amended complaint. 1-ER-52–64. The District Court did not abuse its discretion in denying Plaintiff's motion "in light of: (1) [Plaintiff's] previous amendment; (2) the futility of amendment, where [Plaintiff] only intended to remove, not add, substantive allegations; (3) the prejudice [Twitter] would suffer if litigation was reset again; and (4) the undue delay that had already resulted from Plaintiff's … counsel's failure to investigate the factual basis for [his lawsuit] at an earlier time," which was inconsistent with his duties under Rule 11. 1-ER-11.

**Third**, this Court should affirm the District Court's November 22, 2023 order denying Plaintiff's second motion to remand. 1-ER-11–31. Plaintiff does not dispute that the FAC's allegations that Twitter sold his telephone number, on their face, confer Article III standing. He argues only that the District Court should have disregarded those allegations for

20

standing purposes after Plaintiff conceded he would not be able to prove them. But Plaintiff's concession simply set the stage for a loss on the merits, without affecting his Article III standing. Moreover, even setting those allegations of sale aside, the FAC would still claim that Twitter unlawfully "procured" his telephone number in violation of Section 140. That confers standing in its own right, both because (as the District Court held) statutory prohibitions like Section 140 establish that the injury in question is sufficiently concrete for Article III purposes, and because such a claim under Section 140 closely resembles the common-law harm of intrusion upon seclusion.

**Fourth**, this Court should affirm the district court's November 22, 2023 order granting Twitter's motion to dismiss the FAC under Rule 12(b)(6). 1-ER-37–51. Plaintiff's opening brief does not address two of the District Court's independent grounds for dismissing the FAC under Rule 12(b)(6). Plaintiff has thus waived his challenge to the dismissal order, which was correct in any event.

Plaintiff's opening brief fails to challenge the District Court's first and fourth independent grounds for dismissing the FAC under Rule 12(b)(6) – i.e., (i) Section 140 applies only to the wrongful procurement of

21

information from a telecommunications company, not from an individual like Plaintiff (1-ER-39–44); and (iv) Plaintiff failed to plead basic facts showing that Twitter used any false means to obtain his telephone number, as required by Rule 8 (1-ER-48–49). Plaintiff has thus waived his challenge to the dismissal order, which was correct in any event. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1118 n.6 (9th Cir. 2010); *MacKay v. Pfeil*, 827 F.2d 540, 542 n.2 (9th Cir. 1987).

Moreover, Plaintiff's arguments contesting a portion of the District Court's reasoning are meritless. Plaintiff addresses only the District Court's second and third independent grounds for dismissing the FAC – i.e., (ii) a "telephone record" under Section 140 encompasses only particular, expressly enumerated categories of information about a customer's telephone usage – none of which includes a customer's own telephone number (1-ER-39–44); and (iii) despite bringing a claim that Twitter used false means to obtain his telephone number, Plaintiff failed to identify with particularity any statement by Twitter alleged to be false, as required by Rule 9(b) (1-ER-44–48).

By its plain text, Section 140 enumerates the types of information subject to its provisions – none of which includes a customer's telephone

number. Additionally, Plaintiff simply argues that Rule 9(b) does not apply; he does not dispute that the FAC fails to satisfy Rule 9(b)'s heightened pleading standard. As the District Court recognized, Plaintiff's entire theory is that Twitter knowingly made false statements to Plaintiff to induce him to turn over his telephone number – a theory that sounds in fraud. Thus, Rule 9(b) applies.

**Fifth**, the District Court did not abuse its discretion in dismissing the FAC with prejudice. Plaintiff does not dispute that if the District Court was right to dismiss the FAC, dismissal with prejudice was appropriate. In any event, the District Court acted well within its discretion in dismissing with prejudice because, as the Court emphasized, (i) Plaintiff had already amended the complaint once, and requested a second opportunity to amend, which the Court denied on the basis of futility, prejudice to Twitter, and undue delay; (ii) the textual inapplicability of Section 140 is not an issue that can be feasibly corrected by amendment; (iii) Plaintiff's counsel has had notice of the deficiencies under Rules 8 and 9 since Magistrate Judge Tsuchida's R&R in *Gray* in March 2021, if not earlier, yet repeatedly failed to address them; and

23

(iv) "it is clear that further amendment would be futile, cause prejudice to Twitter, and result in undue delay." 1-ER-49–50.

## STANDARD OF REVIEW

The District Court's orders denying Plaintiff's first and second motions to remand are reviewed de novo. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005). Questions of Article III standing are also reviewed de novo. *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022).

The District Court's order denying Plaintiff's motion for leave to file a second amended complaint is reviewed for abuse of discretion. *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018).

The District Court's order granting Twitter's motion to dismiss the FAC under Rule 12(b)(6) is reviewed de novo. *Chambers v. C. Herrera*, 78 F.4th 1100, 1103 (9th Cir. 2023). A district court's decision to dismiss with prejudice is reviewed for abuse of discretion. *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012).

## ARGUMENT

## I. This Court Should Affirm The District Court's Denial of Plaintiff's First Motion To Remand.

This Court should affirm the District Court's May 5, 2022 order denying Plaintiff's first motion to remand. 1-ER-65–100. As the Court explained, Twitter's removal was timely. 1-ER-88–94. A case "may be removed at any time, provided that neither of the two thirty-day periods under [28 U.S.C.] § 1446(b)(1) and (b)(3) has been triggered." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013). Here, neither § 1446(b)(1) nor § 1446(b)(3) was triggered before Twitter removed this action on May 19, 2022. The District Court thus properly concluded that Twitter's removal was timely. 1-ER-94. Plaintiff does not dispute on appeal that the District Court properly ruled that the FAC conferred Article III standing. 1-ER-69–82.[2] This Court should affirm.

---

[2] There is also no dispute that this putative class action satisfies the substantive requirements for removal – i.e., that this is a "class action[] in which a member of the plaintiff class is a citizen of a state different from any defendant and the aggregate amount of the class members' claims exceeds $5 million." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013); 28 U.S.C. § 1332(d)(2); *see* 1-ER-86–88.

**A.** **Section 1446(b)(1) imposed no limitation on Twitter's ability to remove.**

a. Section 1446(b)(1) provides that a notice of removal "shall be filed within 30 days after the receipt by the defendant … of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). That 30-day clock comes with a crucial caveat: It is triggered only "if the case stated by the initial pleading is removable on its face" – i.e., if the allegations within the "four corners of the applicable pleadings" make clear that each element of federal jurisdiction is satisfied. *Harris*, 425 F.3d at 694-95.

This caveat flows from both the "plain language of the statute" as well as the commonsense observation that requiring a defendant "to determine [whether to remove] within thirty days of receiving [an] initial pleading" that does not reveal whether the case is removable would impose "an unreasonable and unrealistic burden." *Id.* at 694. The rule also serves an important purpose: It promotes clarity in pleadings and avoids gamesmanship, by "prevent[ing] a plaintiff from disguising" a complaint's removability "until after the thirty-day time limit has run to avoid removal to federal court." *Id.* at 697 n.8. If a plaintiff "think[s] that their action may be removable" and wishes to start the defendant's 30-day clock under § 1446(b)(1), they can do so by simply pleading the facts

26

of removability explicitly in the complaint. *Roth*, 720 F.3d at 1126. But if a plaintiff chooses not to provide that clarity, it is "only fair" that they "assume the costs associated with their own indeterminate pleadings." *Kuxhausen v. BMW Fin. Servs. NA*, 707 F.3d 1136, 1141 (9th Cir. 2013).

Accordingly, § 1446(b)(1)'s clock is triggered only when the initial complaint pleads facts sufficient to establish removability with "[n]o investigation, subjective knowledge, or further inquiry" on the part of the defendant. *Id.* at 1140. If the complaint lacks such express allegations, then § 1446(b)(1)'s clock is not triggered, "even if a defendant could have discovered grounds for removability through investigation." *Roth*, 720 F.3d at 1125. Indeed, § 1446(b)(1) is not triggered even if the complaint sprinkles enough breadcrumbs from which a defendant could make a "plausible-enough guess" that the requirements of removability (e.g., class size, amount in controversy) are satisfied. *Kuxhausen*, 707 F.3d at 1141 (holding that § 1446's clock was not triggered when a complaint alleged that every member of a 200-person class suffered damages equal to the value of a German luxury automobile, but failed to state exactly how much such vehicles were worth). Rather, § 1446(b)(1)'s clock begins to run only if the complaint makes removability plain on its face.

27

Here, Plaintiff's state-court complaint did not make removability plain on its face. 4-ER-660–69. CAFA provides federal jurisdiction over class actions with more than 100 members and an amount in controversy of at least $5 million. 28 U.S.C. § 1441(d). Plaintiff's state-court complaint stated neither the estimated number of class members nor the amount in controversy, and thus failed to make plain on its face whether CAFA's requirements were met. Instead, the complaint stated only that the class would consist of "[a]ll Washington persons who provided a telephone number to Twitter associated with a Twitter account prior to September 17, 2019," 4-ER-667, and that it sought damages of $5,000 for each putative class member, 4-ER-668. Those are exactly the kind of "indeterminate" allegations that this Court has held are insufficient to trigger § 1446(b)(1)'s clock. *See Kuxhausen*, 707 F.3d at 1141. Because the clock was not triggered, § 1446(b)(1) imposed no limit on Twitter's ability to remove this action.[3]

Indeed, it was only after a Twitter Senior Staff Software Engineer analyzed certain Twitter business records and determined that the

---

[3] Because Plaintiff's complaint did not trigger § 1446(b)(1), his argument that the 30-day clock starts from the time of service, rather than filing, of the complaint is irrelevant. *See* OB 7, 13, 19, 22.

putative class likely consisted of at least 10,000 individuals, and hence that the amount in controversy was likely more than $50 million, that Twitter removed the action on May 19, 2022. 4-ER-644–45, 4-ER-650–52. These facts are analogous to those in *Roth*, where this Court held that a plaintiff should not "be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own." 720 F.3d at 1125.

b.    Plaintiff does not dispute that his state-court complaint lacked critical pieces of information about class size and amount in controversy. Instead, he argues that this does not matter because "Twitter already knew … that [the] class … was sufficiently numerous that … jurisdiction existed." OB 20. This Court has rejected such arguments, which rely on looking outside the complaint to a defendant's "subjective knowledge." *E.g.*, *Harris*, 425 F.3d at 694-95 (declining to hold that materials outside the complaint start the thirty-day clock and holding that the § 1446(b)(1) clock is not triggered by "subjective knowledge" that a defendant could have developed by "look[ing] in its files within the first thirty days"); *Roth*, 720 F.3d at 1125 (plaintiffs

29

cannot "prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own").

Plaintiff attempts to support his argument by quoting a statement from *Kuxhausen* that says the statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." OB 20 (quoting 707 F.3d at 1140). But *Kuxhausen* explained that this refers simply to a duty to multiply "figures clearly stated in a complaint." 707 F.3d at 1140. In other words, a defendant simply has a duty to perform basic math for "figures clearly stated in a complaint" – i.e., understanding that "$25,000 times 500 potential plaintiffs" is "$12.5 million." *Id.*

In fact, *Kuxhausen* itself emphatically rejected Plaintiff's broader reading, and held that a plaintiff may not require a defendant to assess removability based on "extrapolations or engage in guesswork" about information not provided within an initial pleading's express language. *Id. Kuxhausen* specifically forbade plaintiffs (and courts) from "inquir[ing] into the subjective knowledge of a defendant," or "obligat[ing]" a defendant "to supply information which [the plaintiff] had omitted" from his complaint. *Id.* at 1141. Plaintiff's own complaint

undisputedly provided no "clearly stated" figure for the number of class members or the amount in controversy. Thus, Plaintiff's invocation of *Kuxhausen* serves only to emphasize how it does not trigger § 1446(b)(a)'s clock.

## B. Section 1446(b)(3) imposed no limitation on Twitter's ability to remove.

a. The District Court also correctly held that 28 U.S.C. § 1446(b)(3) did not preclude removal. Section 1446(b)(3) applies when the state-court complaint does not make removability plain on its face, and the defendant later receives "a copy of an amended pleading, motion, order, or other paper" that makes removability clear on its face. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010) (quoting 28 U.S.C. § 1446(b)). The 30-day clock under § 1446(b)(3) is triggered only if the contents of that amended paper – rather than the defendant's "subjective knowledge" of some facts beyond it – makes removability clear. *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1093-94 (9th Cir. 2021) (noting, in fact, that § 1446(b)(3) "seems to require a greater level of certainty").

Section 1446(b)(3) imposes careful limits on the types of papers whose receipt can begin its 30-day clock. For one thing, § 1446(b)(3)

cannot be triggered by "any document received prior to receipt of the initial pleading." *Carvalho*, 629 F.3d at 886. That is because "a case cannot be removed before its inception," so if § 1446(b)(3) included "a document received by the defendant months before receipt of the initial pleading, the requirement that the notice of removal 'be filed within thirty days after receipt by the defendant' of the 'other paper' would be nonsensical." *Id.* at 885. Nor can § 1446(b)(3) be triggered by an "affidavit" or other document "created by the defendant and based on the defendant's subjective knowledge." *Roth*, 720 F.3d at 1126. After all, there is no "receipt by the defendant" of such a document as § 1446(b)(3) requires, so this "cannot start the accrual of the 30–day period" under § 1446(b)(3). *Id.*

Here, Twitter received no "amended pleading, motion, order, or other paper" that indicated the case's removability between Twitter's receipt of the state-court complaint on April 1, 2022 (1-ER-5), and Twitter's removal of the case on May 19, 2022 (4-ER-730). Indeed, the only "paper[s]" that Twitter received during that brief window were notices of appearance for Plaintiff's counsel and an initial set of state-court discovery requests, neither of which did anything to provide the

information that the initial complaint was missing. *See* 4-ER-670–725 (attachment to notice of removal including all state-court filings). Without such a new paper indicating the case's removability, nothing triggered § 1446(b)(3)'s 30-day clock.

b. Plaintiff does not identify any specific "amended pleading, motion, order, or other paper" that he believes triggered § 1446(b)(3)'s clock. Instead, he argues that § 1446(b)(3)'s time limit "commence[s] when a defendant first *knows* that the case is removable" – and that to avoid § 1446(b)(3)'s time bar a defendant must affirmatively "state … when it first learned that the case was removable," which he says Twitter failed to do. OB 20-21. As shown just above, however, that understanding runs directly contrary to both the statutory text and the law of this Circuit.

Indeed, the only support that Plaintiff offers for his understanding of § 1446(b)(3) is a sentence taken out of context from *Jordan v. Nationstar Mortgage LLC*, 781 F.3d 1178 (9th Cir. 2015), stating that "'a defendant may remove a case from state court **within thirty days of ascertaining** that the action is removable under CAFA.'" OB 20-21 (quoting 781 F.3d at 1180). But *Jordan* did not *sub silentio* overturn all

33

of the precedent discussed above. To the contrary, *Jordan* involved a situation where – unlike here – the defendant had received an "other paper" from which removability could be ascertained (namely, an interrogatory response from the plaintiff), which did not happen here. 781 F.3d at 1180. *Jordan* thus provides no support for Plaintiff's suggestion that § 1446(b)(3) is triggered anytime a defendant gains subjective knowledge of a case's removability. And § 1446(b)(3) does not impose an obligation for a defendant to affirmatively state when it gained such subjective knowledge. Thus, the District Court properly denied Plaintiff's first motion to remand.

### C. Plaintiff's original complaint and FAC conferred Article III standing.

In denying Plaintiff's first remand motion, the District Court also ruled that the original complaint's and the FAC's allegations conferred Article III standing, and noted that the FAC "does not substitute or assert an additional legal basis upon which Plaintiff believes relief is warranted." 1-ER-67–68 & n.2; 1-ER-69–82, 1-ER-99. Plaintiff does not challenge that ruling on appeal. OB 18-21 (challenging District Court's denial of first remand motion only as to timeliness of removal); *see* OB 28

34

(accepting the District Court's finding of "Article III [h]arm in [s]ales"). Plaintiff has thus waived the issue. *Smith*, 194 F.3d at 1052.

With good reason: The District Court explained how the original complaint's and FAC's allegations were "analogous to the federally recognized injury of disclosure of private information," establishing "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." And the District Court explained that the FAC made no meaningful change to the claims' "legal basis." 1-ER-68 n.2, 1-ER-81–82.

## II. The District Court Did Not Abuse Its Discretion In Denying Plaintiff's Motion For Leave To File A Second Amended Complaint.

"Whether to grant leave to amend is committed to the sound discretion of the district court." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 845 (9th Cir. 2014). The decision will be upheld so long as it "identified and applied the correct legal rule" in a manner that did not stem from "a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

A district court's discretion in this context should be guided by whether the proposed amendment reflects "undue prejudice to the opposing party, bad faith by the movant, futility," or "undue delay." *Id.* That discretion is "particularly broad where [as here] plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011); *see also .Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("Unless this court has a definite and firm conviction that the district court committed a clear error of judgment, it will not disturb the district court's decision.").

Here, the District Court denied Plaintiff's motion for leave to file a second amended complaint "in light of: (1) [Plaintiff's] previous amendment; (2) the futility of amendment, where [Plaintiff] only intended to remove, not add, substantive allegations; (3) the prejudice [Twitter] would suffer if litigation was reset again; and (4) the undue delay that had already resulted from Plaintiff's … counsel's failure to investigate the factual basis for [his lawsuit] at an earlier time," in violation of Rule 11. 1-ER-11; *see* 1-ER-52–54.

36

The District Court indisputably "identified and applied the correct legal rule," and its factual findings were not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United Bhd. of Carpenters*, 770 F.3d at 845.

### A. The District Court did not abuse its discretion in concluding that Plaintiff's proposed amendment was futile.

a. Leave to amend is properly denied as futile "where a plaintiff 'fails to state what additional facts he would plead if given leave to amend, or what additional discovery he would conduct to discover such facts.'" *Hills v. Indymac Mortg. Holdings, Inc.*, 730 F. App'x 513, 514 (9th Cir. 2018) (quoting *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1052 (9th Cir. 2008)). Plaintiff's proposed amendment did not include any "additional facts." *Hills*, 730 F. App'x at 514. Instead, he admits that he sought to "***remove***[] fact allegations," OB 27 – which makes it ***less*** likely that his complaint would survive dismissal, not more. The District Court properly concluded that, because the amendment would "provide no additional information," it would be "futile." 1-ER-58.

b. On appeal, Plaintiff insists – citing nothing – that a proposed amendment seeking "to *delete* allegations" can be denied as futile "only …

37

if the court has *already* determined that complaint lacks merit." OB 27-28. But that makes no sense. Removing allegations from a complaint, by its nature, does not make the complaint more likely to succeed. In any event, the District Court *did* ultimately determine that the entirety of the FAC could not survive dismissal, further buttressing the finding that the amendment would be futile. *See* 1-ER-37–50.

Plaintiff thus provides no basis for overturning the District Court's determination that his proposed amendment would have been futile. This alone is reason to affirm the district court's judgment.

## B. The District Court did not abuse its discretion in concluding that Plaintiff unduly delayed in seeking leave to amend.

a. A district court properly denies leave to file an amended complaint based on "undue delay" when "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). The same is true when a party "fails to explain how [the] facts" reflected in the amendment were not "available to [him] even before the first amendment to his complaint." *Gonzalez v. JPMorgan Chase Bank, N.A.*, No. 20-55137, 2023 WL 195545, at *2 (9th

Cir. Jan. 17, 2023) (citing *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002)).

Here, the District Court correctly found that Plaintiff's counsel could have and should have known of the facts supposedly prompting his amendment when he filed the original complaint in state court in May 2022, and then filed the FAC in the District Court in February 2023. 1-ER-61; *see* 1-ER-59–62. Plaintiff's counsel claimed that his attempted amendment was prompted by a conversation he had at a social gathering in "late May 2023," at which one of his "friends [or] acquaintances" who was "familiar with online advertising" expressed doubt that advertisers would have purchased telephone numbers from Twitter, as alleged in the FAC (and the state-court complaint before it). 1-ER-59–62; *see* 2-ER-254. According to Plaintiff's counsel, it was that lone comment – combined with his inability over the next week or two to find "other people among [his] network of contacts" who had a contrary view – that led him to "conclude[] that … the allegations in the FAC concerning Twitter's alleged disclosure of data to advertisers was not likely to have evidentiary support." 2-ER-255.

As the District Court explained, there is no excuse for Plaintiff's counsel failing to perform this same minimum investigation – which consisted of "a few conversations undertaken within a few weeks" – before filing his initial complaint in May 2022. 1-ER-61. Indeed, Washington Superior Court Rule 11 obligated him to do so. 1-ER-61; *see also Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2022) ("[An] attorney has a duty prior to filing a complaint" to "conduct a reasonable factual investigation."). That is especially true here, given that Twitter provided Plaintiff's counsel with information as early as December 2020 showing that it did not disclose or sell user information to third parties. 2-ER-249. Although Plaintiff's counsel was not necessarily required to believe Twitter's representations, but – especially given that Twitter backed them up with evidence – he certainly had a duty to investigate them before filing this suit in May 2022.

In the subsequent order denying Plaintiff's second motion to remand, the District Court reaffirmed its denial of Plaintiff's motion for leave to file a second amended complaint, explaining that the above facts "suggest[] that Plaintiff's counsel had not consulted with anyone 'familiar with online advertising' before alleging [Twitter] had violated RCW

40

9.26A.140(1)(a) in April 2022, nor in the prior years of pending litigation in *Gray*," and "this delayed investigation was not consistent with Plaintiff's counsel's obligations under Washington Superior Court Rule 11 and Fed. R. Civ. P. 11." 1-ER-16.

The District Court also reaffirmed that the proposed amendment would have "cause[d] undue delay, given that Plaintiff's counsel had certified that the claims advanced in the Complaints were grounded in fact at the time he filed them in 2020 [*Gray* complaint], 2022 [*Morgan* complaint], and 2023 [*Morgan* FAC], but was now contending that the Subsection (1)(a) claim had been discredited within a few conversations undertaken within a few weeks." 1-ER-18 (alterations omitted).

b.    On appeal, Plaintiff insists – while citing no Ninth Circuit authority – that "under Ninth Circuit precedent," that delay should not have factored into the District Court's analysis, because his request for leave to amend was made "ten days after a 12(b)(6) motion and during a discovery stay." OB 25-26. But as shown by this Court's precedent above, that is not the test. Rather, the operative question is whether Plaintiff's counsel "knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen*, 465 F.3d at

41

953. Plaintiff fails to address that requirement. This, too, is reason alone to affirm the District Court's denial of his motion for leave to file a second amended complaint.

### C. Plaintiff's motion for leave to file a second amended complaint was made in bad faith.

a.    A party "demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006). In the context of a proposed amendment to a pleading, this can occur when the amendment is offered in an effort "to destroy the jurisdiction of this court." *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 804–05 (9th Cir. 1987).

That is what Plaintiff did here. Plaintiff's counsel asserted for years, since 2020, across two identical lawsuits in different districts, that Twitter sold users' telephone numbers, and then suddenly sought to eliminate those allegations for the express purpose of erasing "a case or controversy over which the court has subject matter jurisdiction." 2-ER-260. The District Court diagnosed the ploy.

In denying Plaintiff's motion for leave to file a second amended complaint, the District Court noted "the seemingly inconsistent positions" that had "plagued [Plaintiffs' filings in] this matter from its

42

inception" as well as "the unusual timing of the instant motion [for leave to amend] which comes after an inexplicable delay of investigation and just days after Defendant sought dismissal as a matter of law." 1-ER-63. Additionally, as noted above, the court found "that Plaintiff fail[ed] to adequately explore the factual basis" for his complaint in violation of Rule 11 and its Washington state analogue. 1-ER-61.

While the District Court initially stopped short of making an explicit "finding that Plaintiff has intentionally acted" in bad faith (1-ER-62–63), in its subsequent order denying Plaintiff's second motion to remand, the District Court revisited that determination. 1-ER-18–20. The District Court discussed additional reasons that "cast[] further doubt on whether he is acting in good faith" because Plaintiff's counsel had "continue[d] to take 'inconsistent positions' on Article III justiciability." 1-ER-18–20. The District Court noted that Plaintiff "continued" to engage in suspicious "patterns" in this litigation, including by "continu[ing] to take inconsistent positions," 1-ER-31–35, and making repeated requests of the Court with "unusual timing" that suggested an attempt to thwart the litigation, 1-ER-35.

43

The Supreme Court has cautioned, in the related context of statutory jurisdiction, that "forum-manipulation concerns" abound where the plaintiff in a removed action tries to amend the complaint to escape federal jurisdiction. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007). This Court has addressed those concerns by holding "that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court." *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006). That rule helps ensure that "plaintiffs' attempts to amend a complaint after removal to eliminate federal jurisdiction are doomed to failure." *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1277 (9th Cir. 2017). The District Court's denial of leave to amend here served the same end, barring Plaintiff from belatedly altering his pleadings after removal to escape the federal forum.

b. On appeal, Plaintiff does not meaningfully address any of those findings. Instead, he insists that "bad faith arises where 'plaintiff merely is seeking to prolong the litigation by adding new but baseless legal theories,'" and that because he did not seek to add a legal theory but

44

"removed" one, he engaged in "the opposite of bad faith." OB 26 (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 881 (9th Cir. 1999)) (emphasis Plaintiff's).

But *Griggs* did not set forth the exclusive set of conduct that could give rise to a finding of bad faith; it merely gave one example. As shown above, this Court has identified numerous other examples, such as where amendment is sought in an effort "to destroy the jurisdiction of this court." *Sorosky*, 826 F.2d at 804-05. Plaintiff does not dispute that his proposed amendment fits that bill exactly. For this independent reason too, the District Court's denial of his motion for leave to file a second amended complaint should be affirmed.

## D. The District Court did not abuse its discretion in concluding that Plaintiff's proposed amendment would result in undue prejudice.

a. "[P]rejudice to the opposing party is the most important factor in denying leave to amend." *Segal v. Rogue Pictures*, 544 F. App'x 769, 770 (9th Cir. 2013) (citing *Jackson*, 902 F.2d at 1387). A request for leave to amend is properly dismissed for creating undue prejudice where it would "unfairly impose[] potentially high, additional litigation costs on [the defendant] that could have easily been avoided had [the plaintiff]

45

pursued its … theory in its original complaint." *AmerisourceBergen*, 465 F.3d at 953.

That, too, is exactly the case here. As the District Court explained, Plaintiff's proposed amendment would have "delay[ed] this case and its resolution, require[d] another round of unnecessary briefing, and force[d] [Twitter] to expend resources to re-file" its motion to dismiss. 1-ER-59. In addition, the filing of Plaintiff's motion for leave to file a second amended complaint required Twitter to respond to it and delayed "the resolution of [Twitter's] motion to dismiss." *Id.* The District Court correctly found that this was prejudicial to Twitter. *Id.* Moreover, the District Court held that granting Plaintiff's belated motion for leave to file a second amended complaint "would delay the proceedings even further" and "would eliminate [Twitter's] ability to have [the relevant allegations] addressed on the merits" and "doing so would prejudice [Twitter]." *Id.* Thus, the District Court did not abuse its discretion in denying Plaintiff's motion.

b.    On appeal, Plaintiff makes the same error as with his argument on bad faith – mistaking *one example* of where leave to amend may be properly denied for the *only example*. Specifically, Plaintiff cites one case holding that an amendment "may be denied for prejudice where

46

it would require additional discovery," and argues that because "discovery had not begun" here, his proposed amendment did not run afoul of that rule. OB 23-24 (citing *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002)). But again, this is only a single example of prejudice. It is not the *only* way that an amendment can cause prejudice. Plaintiff's argument is therefore unavailing.

## III. The District Court Properly Denied Plaintiff's Second Motion to Remand.

Article III standing exists where: (1) the plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "the injury was likely caused by the defendant;" and (3) "the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The support required to establish those elements depends on the "stage[] of the litigation." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Where, as here, the case has not progressed beyond the pleadings, a court "'must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

47

Here, there is no dispute that the latter two elements of Article III standing are satisfied: The FAC alleges that Twitter caused Plaintiff injury by wrongfully "procur[ing] and "s[elling]" Plaintiff's private telephone records, and it seeks redress for those injuries in the form of "statutory damages of $5,000 for each violation." 3-ER-403–04. The only question is thus whether Plaintiff's allegations constitute a concrete harm. They do, for at least two separate reasons.

### A. The District Court properly concluded that it had Article III jurisdiction based on Plaintiff's allegations that Twitter sold his telephone number in violation of Section 140.

Plaintiff admits that his FAC alleged that Twitter wrongfully obtained and then sold his telephone number. OB 28-29. The District Court held – and Plaintiff does not dispute – that wrongfully selling a telephone record under Section 140 would give rise to Article III injury, because such a harm is "analogous to the federally recognized injury of disclosure of private information" and "has a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." 1-ER-79.

Plaintiff argues solely that the District Court was bound to disregard those allegations because he "abandoned the sales issue." OB

48

29. Specifically, he claims that because he conceded that those allegations were meritless, it rendered them "moot" and thus incapable of supporting federal jurisdiction. AB 29-30.

Plaintiff's argument misunderstands mootness doctrine. As the District Court explained (echoing the Supreme Court), a claim "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." 1-ER-20 (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). In other words, mootness assumes a party will prevail on its claims, and then asks whether a court could grant effective relief in response to that victory. Mootness is distinct from whether a plaintiff will be able to *prove* the allegations in his complaint. *See, e.g.*, *Ariz. State Legislature v. Ariz. Indep. Redist. Comm'n*, 576 U.S. 787, 800 (2015) ("[O]ne must not confuse weakness on the merits with absence of Article III standing."). "An argument that an action is moot because the plaintiff is not entitled to the requested relief … is no more than an argument on the merits that should be decided on the merits." Wright & Miller, 13B Fed. Prac. & Proc. Juris. § 3533.1 (3d ed. 2023).

That is exactly the argument that Plaintiff makes here. OB 29-30. According to Plaintiff, anytime a party concedes that one of its

49

contentions cannot be proved, the court must not resolve that issue against the conceding party, but instead strip it from the case on grounds of Article III mootness. That is plainly not the law. Parties frequently abandon arguments, and courts just as frequently conclude that the argument's meritlessness does not mean the case lacks the "adverseness" required for Article III jurisdiction, and thus go on to address those arguments on the merits. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2196 (2020); *see Ariz. State Legislature*, 576 U.S. at 800. Indeed, the District Court carefully cataloged cases from this Court doing exactly that, all of which Plaintiff ignores in his opening brief. 1-ER-20 (citing *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009); *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 825-27 (9th Cir. 2000)).

Plaintiff even concedes in his opening brief that the District Court could have dismissed "with prejudice" his claim that Twitter sold his telephone number – and admits that Plaintiff "would have freely consented to such a condition, had it been proposed either by Twitter or by the Court." OB 24–25. Thus, Plaintiff concedes that he would have consented to such a ruling on the merits, which the District Court could only enter if it has Article III jurisdiction. Plaintiff's own brief thus

refutes his argument that by simply conceding the incorrectness of his claim on the merits, he somehow deprived the District Court of jurisdiction.

Plaintiff's concession that he will likely be unable to prove his allegations warrants resolving those allegations against him on the merits – not dismissing the case for lack of jurisdiction. For this reason alone, the District Court properly denied Plaintiff's second motion to remand.

## B. Alternatively, the District Court properly concluded that it had Article III jurisdiction based on Plaintiff's allegations that Twitter wrongfully obtained his telephone number in violation of Section 140.

In any event, as the District Court explained, it would have had Article III jurisdiction even without allegations that Twitter sold Plaintiff's telephone number. 1-ER-28–31. That is because Plaintiff's allegations that Twitter wrongfully *obtained* his telephone number are alone sufficiently concrete to support Article III standing. *Id.* As the Supreme Court has explained, an "intangible harm[]" is "sufficiently concrete to qualify as injury in fact" if it either (1) has been "elevate[d] to the status of legally cognizable injur[y]" through a legislative act, or (2) bears "a close relationship to harms traditionally recognized as

providing a basis for lawsuits in American courts." *TransUnion*, 594 U.S. at 425. Here, Plaintiff's claimed injury qualifies under both standards.

### 1. The Washington Legislature's decision to impose a statutory prohibition on wrongful obtainment of a telephone number establishes concrete injury.

"In determining whether a harm is sufficiently concrete," courts "must afford due respect to [a legislature's] decision to impose a statutory prohibition or obligation on a defendant." *Id.* Said otherwise, although Article III's injury-in-fact requirement is not "automatically satisfie[d] … whenever a statute … purports to authorize [a] person to sue to vindicate [a] right," the fact that a legislature decided to specifically identify (and protect against) an injury to an individual's rights is still "instructive" in determining whether that injury is sufficiently concrete. *Id.* at 425-26. That is particularly so when the statute directly protects a "substantive" right, as opposed to enacting mere "procedural obligations" that prevent injury only indirectly. *Eichenberger v. ESPN*, Inc., 876 F.3d 979, 982-83 (9th Cir. 2017); *see also TransUnion*, 594 U.S. at 440.

Here, as Plaintiff himself alleges, the Washington Legislature specifically determined that defendants "obtain[ing] the telephone record of any resident of this state to whom the record pertains" by "fraudulent,

deceptive, or false means," RCW 9.26A.140(1)(b), posed a serious risk to "civil rights" and individual "[p]rivacy." 3-ER-379–80. Indeed, the legislature not only "grant[ed] a plaintiff a cause of action to sue" (which the Supreme Court itself recognized as a relevant indicator), *TransUnion*, 594 U.S. at 425, but made such acts a "felony," RWC 9.26A.140(3). Unlike other statutes (such as the one at issue in *TransUnion*) which (sometimes vaguely) "outline[] procedural obligations that sometimes protect individual interests," RCW 9.26A.140 specifically "identifies a substantive right to privacy that suffers any time" a defendant fraudulently obtains "otherwise private information." *Eichenberger*, 876 F.3d at 983-84. Said otherwise, "every [RCW 9.26A.140] violation presents the precise harm and infringes the same privacy interests [the legislature] sought to protect by enacting [the statute]." *Id.* at 984.

Accordingly, just as Congress identified a particular, substantive right of privacy related to individuals' private video records, whose violation constitutes a "concrete" injury for purposes of Article III standing, by passing a statute forbidding exactly that, *see Eichenberger*, 876 F.3d at 983-84; so too has the Washington Legislature identified a

particular, substantive right of privacy related to an individual's private telephone records, whose violation can give rise to Article III standing, by enacting RCW 9.26A.140 to forbid their wrongful procurement.

### 2. Plaintiff's claimed injury is closely analogous to harms actionable at common law.

In addition, the privacy rights secured by RCW 9.26A.140(b) are closely analogous to those that "have long been actionable" in American law. *Eichenberger*, 876 F.3d at 983. Plaintiff's claim of unauthorized procurement of telephone records tracks the injury that historically had been redressed via an intrusion upon seclusion claim. Classically, intrusion upon seclusion arose when a defendant "intentionally intrude[d], physically or otherwise, upon … [a plaintiff's] private affairs or concerns." Restatement (Second) of Torts § 652B. Of particular relevance here, such a claim could arise where the defendant used deception to "examine" a company's "records" pertaining to the plaintiff (such as an individual's banking records). *See id.* & illus. 2-4.

Swap "telephone" for "banking" in the prior sentence, and Plaintiff's theory of statutory injury here matches exactly. Accordingly, that alleged injury is sufficient for standing. *TransUnion*, 594 U.S. at 424-25 (an

injury with "a close relationship to" the common-law tort of "intrusion upon seclusion" is sufficiently "concrete").

## IV. The District Court Properly Granted Twitter's Motion To Dismiss The FAC Under Rule 12(b)(6).

The District Court dismissed Plaintiff's claim that Twitter violated Section 140's prohibition on using false means to "obtain[] the telephone record of any resident of [Washington]," RCW 9.26A.140(1)(b), on four independent grounds.[4] 1-ER-3–51. On appeal, Plaintiff does not dispute two of those four independent grounds, and thus he has waived any challenge to the district court's dismissal order. Moreover, Plaintiff's limited arguments contesting a portion of the District Court's reasoning are meritless.

---

[4] Section 140 also makes it unlawful to "[i]ntentionally sell[] the telephone record of any resident of [Washington] without the authorization of the customer to whom the record pertains." RCW 9.26A.140(1)(a). As noted above, however, Plaintiff conceded that he does not state a claim under that provision. The District Court relied on that concession in dismissing his Section 140 claim to the extent it relied on a theory that Twitter sold his telephone number, 1-ER-37, and Plaintiff does not challenge that dismissal on appeal. Accordingly, this part of Section 140 is irrelevant for purposes of this appeal.

55

### A. Plaintiff waived his challenge to the District Court's order granting Twitter's motion to dismiss, by failing to address two independent grounds that the District Court gave for dismissal.

"[T]he failure of a party in its opening brief to challenge an alternate ground for a district court's ruling given by the district court waives that challenge." *Stroh v. Saturna Cap. Corp.*, 746 F. App'x 639, 640–41 (9th Cir. 2018) (quoting *Rodriguez*, 591 F.3d at 1118 n.6). Thus, where a party fails to challenge all alternative grounds given in support of a district court's decision, "the district court's disposition … neither will be reviewed nor disturbed by this court." *Stroh*, 746 F. App'x at 641 (quoting *MacKay*, 827 F.2d at 542 n.2).

That is exactly the case here. The District Court gave four independent reasons for granting Twitter's motion to dismiss the FAC:

> (1) Section 140 applies only to the wrongful procurement of information from a telecommunications company, not from an individual like Plaintiff (1-ER-39–44);
>
> (2) A "telephone record" under Section 140 encompasses only particular, expressly enumerated categories of information about a customer's telephone usage – none of which includes a customer's own telephone number (1-ER-39–44);
>
> (3) despite bringing a claim that Twitter used false means to obtain his telephone number, Plaintiff failed to identify with particularity any statement by Twitter alleged to be false, as required by Rule 9(b) (1-ER-44–48); and,

56

(4) even if Rule 9(b) did not apply, Plaintiff still failed to plead basic facts showing that Twitter used any false means to obtain his telephone number, as required by Rule 8 (1-ER-48–49).

On appeal, Plaintiff challenges only the **second** and **third** of those reasons. *See* OB 34-37 (arguing that "[t]he statute's definition of 'telephone record' explicitly includes phone numbers"); OB 37-40 (arguing that Plaintiff was not required to "satisfy the fraud pleading standard of Rule 9(b)").

Plaintiff does not address the **first** and **fourth** independent that the District Court gave for its holding. Because Plaintiff has failed to address on appeal two of the independent bases that the District Court gave for dismissing the FAC, he has waived his challenge to the District Court's order granting Twitter's motion to dismiss under Rule 12(b)(6). *See Stroh*, 746 F. App'x at 640-42; *Rodriguez*, 591 F.3d at 1118 n.6; *MacKay*, 827 F.2d at 542 n.2. For this reason alone, the District Court's dismissal order should be affirmed.[5]

---

[5] The District Court's holdings on the unchallenged issues were also undoubtedly correct. As to the District Court's first reason, the text of the statute is clear that to qualify as a "telephone record" under Section 140, information must be "retained by a telecommunications company." RCW 9.26A.140(5)(b). As Plaintiff alleged below, "Twitter obtained Morgan's cell phone number ***from Morgan***." ER-397 (emphasis added)).

57

**B.** **This Court should affirm the District Court's second independent ground for dismissal because a telephone number alone is not a "telephone record" under Section 140.**

a. As relevant here, Section 140 makes it unlawful to, "[b]y fraudulent, deceptive, or false means obtain[] the telephone record of any resident of [Washington] to whom the record pertains." RCW 9.26A.140(1)(b). Section 140 defines "telephone record" to mean:

> information retained by a telecommunications company that relates to the telephone number dialed by the customer or the incoming number or call directed to a customer, or other data related to such calls typically contained on a customer telephone bill such as the time the call started and ended, the duration of the call, the time of day the call was made, and any charges applied.

RCW 9.26A.140(5)(b).

As the District Court explained, the "statutory text is unambiguous" that a "telephone record" "cannot reasonably be interpreted to include [a] phone number … alone." 1-ER-43. If a

---

Accordingly, Plaintiff failed to plead facts giving rise to a Section 140 claim. As to the District Court's fourth reason, the only statements from Twitter that Plaintiff's pleadings reference, even in passing, are from "a 2019 notice to users and in its 2011 and 2020 settlements with the Federal Trade Commission" (ER-49; *see* ER-384–94) – which Plaintiff fails to allege he has even seen, much less "relied on in 2016" when he provided his telephone number to Twitter (ER-49).

"telephone record" simply included any telephone number, that would "render[] meaningless" the "long clause" specifying what other information or circumstances are required for a "telephone number" to qualify as a "telephone record." 1-ER-39–44.

Indeed, Section 140 carefully enumerates the specific classes of information that it means to include in the definition of "telephone record," which notably omit any mention of the customer's own number. If the Legislature meant for "telephone record" to include something as basic as the user's own number, it would have said as much – especially when it took the trouble to catalog the specific types of information, like the cost of a call. Its omission is thus telling. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018) ("The expression of one thing implies the exclusion of others[.]"); *accord In re Det. of Williams*, 55 P.3d 597, 604 (Wash. 2002) ("[T]o express one thing in a statute implies the exclusion of the other.").

In addition, "the meaning of words may be indicated or controlled by those with which they are associated." *State v. Roggenkamp*, 106 P.3d 196, 200 (Wash. 2005); *accord Yates v. United States*, 574 U.S. 528, 543-44 (2015) (a statutory term is "given more precise content by the

neighboring words with which it is associated"). Here, all the enumerated items described as "telephone records" reflect difficult-to-obtain, nonpublic information about a customer's calling behavior, such as who the customer called or received calls from (i.e., "the telephone number dialed by the customer" or "the incoming number or call directed to a customer"), when the customer made calls (i.e., "the time the call started and ended" or "the time of day the call was made"), how long the customer's calls were (i.e., "the duration of the call"), and how much the customer paid for the call service (i.e., "any charges applied," which itself is a proxy for how long the call lasted and who it was with). RCW 9.26A.140(5)(b). A telephone number alone, by contrast, reflects nothing of that sort (and is often publicly available in any event, typically from the telephone company itself as part of 411-type services). It is thus qualitatively different from the enumerated items, and its omission from Section 140's coverage is both logical and deliberate.

The legislative history confirms what the statute's plain text says. As explained above, the Legislature passed RCW 9.26A.140 to combat a practice known as "pretexting," in which a third party fraudulently poses as a telephone carrier's customer to induce the carrier to disclose the

60

customer's call records. *Supra* 6-7 (citing 1-ER-74, 2-ER-333); *see also* 2-ER-361 (Congressional report describing pretexting as obtaining "confidential customer telephone records" by "using false pretenses, including posing as the carrier's customer, to induce the carrier's employees to disclose the records"). The legislative history contains no discussion of anyone, let alone legitimate businesses, obtaining personal information from consumers themselves – much less that the Legislature meant for Section 140 to bar such conduct. Thus, Plaintiff's claim is not covered by Section 140.

b. On appeal, Plaintiff simply repeats the same rationales the District Court considered and rejected below. Plaintiff's primary argument – that "the definition of 'telephone record' in RCW 9.26A.140(5) explicitly includes telephone numbers," OB 34 – is meritless. As described above, the statute's inclusion of *specific* categories of information – none of which Plaintiff claims are at issue here – refutes Plaintiff's arguments.

Plaintiff fares no better with his fallback argument that "the Caller ID exception in the second sentence" – by which he means a sentence in Section 140 stating that a "'[t]elephone record' does not include any

information collected and retained by customers using caller identification," RCW 9.26A.140(5)(b) – "only makes sense if numbers are included in the definition of 'telephone record,' except when gathered using Caller ID." OB 37. Plaintiff argues that if "telephone record" does not encompass a telephone number standing alone, then "there is no purpose to the exception." OB37.

This argument is meritless because, as both Magistrate Judge Tsuchida and the District Court recognized, Caller ID does not collect telephone numbers standing alone, but rather "receives information … from a telephone company … about another person's telephone behavior (the incoming number, call time, duration, place of origination, and name of the dialer)." SER-37–38; *see* 1-ER-43–44. Without the exemption, therefore, Caller ID would run afoul of Section 140(1)(d)'s prohibition on receiving information about another person's calling behavior, retained by a telephone company – without consent. SER-37–38; 1-ER-43–44. Accordingly, this Court should affirm the District Court.

### C. This Court should affirm the District Court's third independent reason for dismissal because Plaintiff's FAC failed to satisfy Rule 9(b).

Plaintiff does not dispute that the FAC failed to satisfy the pleading requirements of Rule 9(b). Instead, he contends that Rule 9(b) does not apply, because stating a claim under Section 140 does not *require* a plaintiff to plead fraud. OB 37-40. Plaintiff argues that one could state a claim under Section 140 by pleading only the use of "deceptive means," which he claims is "broader" than fraud. OB 38.

As the District Court explained, however, Rule 9(b) can apply even where "fraud is not a necessary element of a claim," but "a plaintiff … choose[s] nonetheless" to plead allegations that "sound in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)); 1-ER-45–46. It thus does not matter whether Section 140 *requires* a plaintiff to plead fraud or not; if a plaintiff *chooses* to allege that the defendant engaged in conduct that sounds in fraud, then Rule 9(b) applies.

That is exactly the case here. As the District Court held, the FAC's allegations sounded in fraud, including because Plaintiff's allegations were consistent with elements of a fraud claim under Washington law:

> (1) that Defendant assured Plaintiff Morgan that it protected users' phone numbers and complied with users' privacy

63

choices; (2) that users like Plaintiff Morgan consider such assurances material in deciding whether to disclose their phone number; (3) that the assurances were false in light of Defendant's practices; (4) that Defendant knew the assurances were false; (5) that Defendant intended users to rely on its false assurances; (6) that this falsity was "unbeknownst to any Twitter user"; (7) that Plaintiff Morgan and other users relied on these assurances; (8) that Plaintiff Morgan and other users were "entitled" to assume that Defendant's assurances were truthful; and (9) that Plaintiff Morgan sustained injury as a result of these false assurances.

1-ER-45–46 (citing 2-ER-383–400, ¶¶ 35-38, 58-59, 62-66, 119-22, 142); *see also Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012) (en banc) (enumerating those nine elements of fraud claim).

Under *Vess*, 317 F.3d at 1103 – which Plaintiff does not address in his opening brief – Plaintiff's choice to plead those allegations triggered Rule 9(b)'s heightened pleading standard. Because Plaintiff undisputedly does not meet that standard, the District Court's order dismissing his claim for failure to satisfy Rule 9(b) should be affirmed. This, too, is reason alone to affirm the District Court's dismissal of his case on the merits.

## V. The District Court Properly Granted Twitter's Motion To Dismiss Under Rule 12(b)(6) With Prejudice.

This Court reviews a district court's decision to dismiss a claim with prejudice for abuse of discretion. *Brown*, 674 F.3d at 1133. Plaintiff does

not dispute that if the District Court was right to dismiss the FAC, dismissal with prejudice was appropriate.[6] The District Court acted well within its discretion in any event.

This Court considers "five factors in assessing whether a district court abuses its discretion in dismissing a complaint without leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013). The District Court's "discretion to deny such leave is 'particularly broad' where," as here, "the plaintiff has previously amended its complaint." *Id.*

The District Court soundly invoked those factors. 1-ER-49–50. It emphasized that: (i) Plaintiff had "already amended the complaint once, without complying with the requirements of [Rule] 15, and requested a second opportunity to amend, which the Court denied on the basis of futility, prejudice to [Twitter], and undue delay;" (ii) "[t]he textual

---

[6] Indeed, Plaintiff did not even request leave to amend in opposing Twitter's motion to dismiss the FAC under Rule 12(b)(6). ER-49. Nor did Plaintiff's opening brief argue that such leave was warranted. So that argument, too, is "deemed waived." *Smith*, 194 F.3d at 1052.

inapplicability of [Section 140] is not an issue that can be feasibly corrected by amendment"; (iii) "[a]s for the deficiencies under Rules 8 and 9, Plaintiff's Counsel has had notice of these issues since the magistrate judge's Report and Recommendation in *Gray v. Twitter*, if not earlier, yet repeatedly failed to address them"; and (iv) synthesizing all of those case-specific considerations, the District Court concluded that "[i]t is clear that further amendment would be futile, cause prejudice to Defendant, and result in undue delay." 1-ER-49–50.

The District Court's dismissal without leave to amend was therefore proper. *See Ecological Rts. Found.*, 713 F.3d at 520 (holding that dismissal without leave to amend was appropriate due to undue delay and previous amendments).

66

## CONCLUSION

For the reasons above, this Court should affirm the judgment of the District Court.

Respectfully submitted,

*/s/Aravind Swaminathan*

Aravind Swaminathan
ORRICK, HERRINGTON &
 SUTCLIFFE LLP
701 Fifth Avenue, Suite 5600
Seattle, WA 98104
(206) 839 - 4300
aswaminathan@orrick.com

*Counsel for X Corp., successor in interest to named Defendant-Appellee Twitter, Inc.*

July 19, 2024

## STATEMENT OF RELATED CASES

I am unaware of any related case currently pending in this Court.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Aravind Swaminathan*
Aravind Swaminathan
*Counsel for X Corp., successor in interest to
named Defendant-Appellee Twitter, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is 13,068 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Aravind Swaminathan*
Aravind Swaminathan
*Counsel for X Corp., successor in interest to named Defendant-Appellee Twitter, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on July 19, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/Aravind Swaminathan*
Aravind Swaminathan
*Counsel for X Corp., successor in interest to named Defendant-Appellee Twitter, Inc.*