No. 23-3764

In the United States Court of Appeals
for the Ninth Circuit

Glen Morgan,

*Plaintiff — Appellant,*

v.

Twitter, Inc.[1],

*Defendant — Appellee.*

Appeal from the United States District Court for the
Eastern District of Washington; No. 3:22-cv-00122-MKD

Morgan's Reply Brief

Ard Law Group PLLC

Joel Ard
joel@ard.law
P.O. Box 11633
Bainbridge Island, Washington 98110
(206) 701-9243

Albrecht Law PLLC

David K. DeWolf
david@albrechtlawfirm.com
5105 E 3rd Ave., Suite 101
Spokane Valley, WA 99212
(509) 495-1246

October 7, 2024

---

[1] Since the case was filed, Twitter has been renamed "X." Morgan continues to refer to the entity as "Twitter," consistent with earlier pleadings and rulings.

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................1

II. TWITTER HAS FAILED TO SHOW THAT THIS OR ANY FEDERAL COURT HAS ARTICLE III JURISDICTION OVER MORGAN'S TELEPHONE NUMBER PROCUREMENT CLAIM...............3

    A. Twitter Must Show That Morgan Alleges An Act Causing Him Concrete Harm ........................................................................ 6

    B. Twitter Failed To Show A Material Risk Of Future Tangible Harm. ...... 8

    C. Twitter Failed To Show A Violation Of The Common Law Right To Privacy. ....................................................................... 9

    D. Twitter Failed To Show A Cognizable Constitutional Violation. ...........12

    E. Courts Routinely Distinguish Between Taking And Selling Data Protected By Mere Statute: The First Creates No Standing.................12

III. TWITTER FAILS TO SHOW IT TIMELY REMOVED. .............. 13

IV. TWITTER FAILS TO SHOW THAT WASHINGTON LAW SUPPORTS THE MERITS DECISION OF THE COURT BELOW. ........ 15

V. CONCLUSION. ................................................................ 23

# Table Of Authorities

## Cases

*A.S. v. SelectQuote Ins. Servs.*, No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ............................................................ 13

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020)....................................7

*Cowles Publ'g Co. v. State Patrol*, 109 Wash. 2d 712 (1988) ........................... 11

*Davidson v. Constr. Teamsters Training & Upgrading Fund for S. California*, No. 2:24-CV-01324-AB-MAA, 2024 WL 1585510 (C.D. Cal. Apr. 11, 2024) ........................................................................................... 14

*Doe v. Apple*, 2023 WL 3301795 (S.D. Ill. May 8, 2023) ...................................... 13

*Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086 (9th Cir. 2016) ........................................................................................................................ 6

*Hauffen v. Nissan N. Am., Inc.*, No. LA CV24-03727 JAK (AGRX), 2024 WL 3462347 (C.D. Cal. July 15, 2024) .................................................. 14

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) ........................................................................................................................ 6

*Kohrs v. Swift Transportation Co. of Arizona, LLC*, No. 2:24-CV-03570-SVW-MAA, 2024 WL 3462342 (C.D. Cal. July 18, 2024).................... 14

*Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010)............................................7

*Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019) .......................7

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260 (9th Cir. 1998)......................................................................................................................7

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ............................................7

*Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023) ............. 7, 8, 12

*Roberts v. AT&T Mobility LLC*, 877 F.3d 833 (9th Cir. 2017) .................................12

*Russell v. Gregoire*, 124 F.3d 1079 (9th Cir. 1997) ...............................................12

*Sanchez v. Los Angeles Dep't of Transportation*, 39 F.4th 548 (9th Cir. 2022) ......................................................................................................................10

*Thornley v. Clearview AI, Inc.*, 984 F.3d 1241 (7th Cir. 2021) .....................5, 12, 23

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..........................................passim

# Statutes

RCW 9.26A.140 ................................................................................ passim

## I. INTRODUCTION

After reading Twitter's Opposition brief, the Court would be forgiven for double checking Article III: does federal jurisdiction now extend not only to cases and controversies, but also to *ad hominem* attacks? Unfortunately for Twitter, it does not. Article III jurisdiction does not exist unless Twitter—the proponent of federal jurisdiction—can carry its burden to show that its use of deceptive or false means to procure a person's cell phone number results in a concrete harm. Twitter claims that "gamesmanship" should bear on this Court's authority to decide the merits of this appeal. Instead, the rule is clear: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).

When Morgan brought this action in state court, he sought only the statutory damages remedy designed to encourage private enforcement of a state consumer protection statute.[2] Based on Twitter's admission that (contrary to its promises to

---

[2] The court below made much of the fact that plaintiff's counsel, representing a fellow class member to Morgan, brought an earlier, identical action in federal court. The Court below accused plaintiff's counsel of taking "inconsistent" positions regarding federal jurisdiction. The explanation, oft-repeated to the court by Morgan, is twofold: first, the intervening decision in *TransUnion*. Prior to that case, this Court had held that statutory damages claims, without more, qualified for federal jurisdiction under CAFA. *TransUnion*'s reversal of this Court made clear that without an allegation of concrete harm—also lacking in this case—there is no Article III jurisdiction. Second, Twitter, by removing, assumed the burden of demonstrating federal jurisdiction. Jurisdiction is no different from any other issue, and at every stage of litigation, parties dispute not only the factual and legal merits, but also which party has

users) Twitter targeted advertising based on the user's cell number, Morgan brought two claims: the unlawful procurement of telephone records, and the sale of such records. When it became clear that Twitter did not disclose the cell numbers used in targeted advertising, Morgan dropped the sales claim, so that the only remaining claim was that Twitter unlawfully procured telephone records. Based on this Court's extensive precedent, followed, for example, by district courts in similar cases brought under the Illinois Biometric Identification Privacy Act, this claim that does not satisfy Article III's standing requirement.

Even if Twitter could carry its burden to show that this Court—today—has jurisdiction, it hasn't shown that its initial removal was timely. Twitter simply didn't understand state law, and continues to try to hide from its error in a cloud of obfuscation of facts and governing law.

Finally, Twitter seeks to preserve a merits dismissal that, as Morgan's opening brief showed, ignores Washington state law. To reach the conclusion that RCW 9.26A.140 fails to protect telephone numbers, the Court below contorted the statute and Washington precedent beyond recognition. Twitter disregards the plain text of the relevant definition in asking the Court to conclude that telephone numbers are both protected and unprotected, depending on how they were wrongfully procured. To create that distortion of state law, Twitter would have this Court conclude that the legislators who enacted RCW 9.26A.140 actually narrowed the

---

met its burden to carry the issue. Morgan filed in state court. By its removal, Twitter agreed to assume burdens that co-plaintiff Gray could not impose on it, and which Twitter has not, and cannot meet.

scope of its coverage as it progressed through enacting process, even though the legislative record establishes that they intended to expand it in the key amendment. If the Court were authorized to reach the merits, that decision must be reversed.

## II. Twitter Has Failed To Show That This Or Any Federal Court Has Article III Jurisdiction Over Morgan's Telephone Number Procurement Claim.

Morgan raised two claims in the Complaint and FAC. The first claim alleged facts showing that Twitter procured his cell phone number from him using deceptive means, and was based entirely on Twitter's prior disclosures to investors and federal regulatory bodies. The second alleged that Twitter had disclosed that number to advertisers in exchange for money. In the Complaint, Morgan alleged that the second claim was not merely plausible, but that it was likely to be supported by discovery of information uniquely in Twitter's possession. After all, Twitter had charged its customers more for advertising targeted to users' cell phone number, as it had admitted to its users and the Federal Trade Commission. Basic market economics would compel advertisers to ask for evidence to prove the benefit of the bargain before paying the additional amounts for targeted ads, and they would likely ask for the numbers themselves. Best evidence, after all. The FAC buttressed the second claim with sworn testimony of Twitter's recently fired head of data security, who told the United States Senate that Twitter had routinely disclosed vast quantities of private, protected user data to advertisers, with little to no regard for privacy protection promises it had made in order to gather the data from users.

Morgan's SAC, however, resolved the second claim in Twitter's favor. Shockingly, despite testimony that Twitter would willingly release any protected user data for money, it had become clear that Twitter's customers put so little value on its sole product—advertisements—that it appears that Twitter's customers never sought assurances that they actually got what they paid for. As a result, Morgan sought to amend his operative pleading to drop his second claim. Although the court below denied the amendment,[3] the second claim is non-operative, abandoned, and resolved in favor of Twitter. At least for purposes of this case, this suit now presents only one claim: that Twitter procured cell phone numbers from Morgan and the class using false or deceptive means.

Twitter's Opposition fails to carry its burden to show Article III standing, but does traffic in misstatements, ad hominem attacks, and red herrings. Twitter contends that Morgan forfeited the right to appeal the district court's erroneous finding of Article III standing, Opposition at 19, and claims that Morgan admitted that his Complaint conferred standing. As to the first point, Morgan has contested Article III jurisdiction in every paper, appealed the incorrect denial of remand, and, pursuant to Circuit Rules, promptly sought remand from this Court. As to the second, Twitter has continually, and intentionally, misrepresented Morgan's position, an error adopted by the court below. Twitter, not Morgan, has the burden to show Article III jurisdiction, and Morgan's argument, continually reiterated, is

---

[3] For improper reasons, as detailed in Morgan's Motion to Remand and Opening Brief.

that Twitter has failed to carry its burden. Twitter's accusation, no matter how often repeated, disregards the fundamental principle of litigation burdens. Morgan's position is no different than a criminal defendant declining to present evidence after the prosecution rests: only those entirely ignorant of the law would argue, as Twitter does here, that the defendant has "admitted" anything by arguing that the party with the burden of proof has failed to make its case.

Twitter—and the court below—would have federal courts retain otherwise non-existent Article III jurisdiction where a removing defendant contends that there is something untoward about the plaintiff's positions. But a plaintiff is fully entitled to plead a claim that blatantly *avoids* jurisdiction, even to the extent of pleading a class definition to avoid *TransUnion* and Article III. *See, e.g.*, *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246 (7th Cir. 2021) (no constitutional jurisdiction over a class defined as those "who suffered no injury from Defendant's violation of Section 15(c) of BIPA other than statutory aggrievement...."). Indeed, the class definition in the FAC here tracks the remanded class definition on *Thornley*, naming a prospective class only of those Twitter users from whom Twitter procured a number in violation of the statute, with no separate, different, or subclass of those whose number might have been sold. *See* 3-ER-400 (Class defined as "All Washington persons who provided a telephone number to Twitter associated with a Twitter account.").

As such, none of Twitter's attacks matter. Either Article III jurisdiction exists or it does not; if not, this Court is powerless to continue. Neither Morgan's supposed "admission," nor his purported failure to appeal, nor even—had he done so—a complete abandonment of his continuous challenge to Article III jurisdiction would

make a difference. "No action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings. Similarly, a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1100 n8 (9th Cir. 2016) (same).

## A. Twitter Must Show That Morgan Alleges An Act Causing Him Concrete Harm

It is axiomatic that if the removing defendant cannot show that the Plaintiff's claim alleges a concrete harm, there is no Article III jurisdiction. As Morgan showed in his Opening Brief, the court below initially rejected Twitter's argument that the unlawful procurement of telephone numbers created a "concrete injury" as required by *TransUnion*. Opening Brief at 28-29, quoting 1-ER-76. But after Morgan abandoned his claim that Twitter *sold* the telephone records it unlawfully procured, the court below attempted to resuscitate standing by claiming that procurement of telephone numbers was comparable to invasions of privacy where a concrete injury has been recognized. However, Twitter cannot show that its act of violating a consumer protection statute by procuring a person's cell phone number, without more, causes an Article III cognizable concrete harm. Indeed, following *TransUnion*, this Court has firmly and completely foreclosed the prospect of Article III standing as to Morgan's sole claim that Twitter illegally procured his telephone record. "Unless the retention of unlawfully obtained or created information amounts to the

type of concrete injury recognized by the Supreme Court, it is insufficient to establish standing." *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 993 (9th Cir. 2023).

In affirming the dismissal of plaintiffs' case for lack of standing, the *Phillips* court identified a series of Ninth Circuit cases where certain records-collecting and retention *satisfied* the requirement of alleging Article III concrete harm:

- Collecting blood and urine to test for certain illnesses and pregnancy, *see Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260 (9th Cir. 1998).
- Unlawful seizure and retention of documents comprising client files, bank records, and husband-wife communications, *see Mayfield v. United States*, 599 F.3d 964 (9th Cir. 2010).
- Acts by a "social media company that captured, read, and used information in their private messages," *see Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020).
- A third party obtaining a credit report, *see Nayab v. Cap. One Bank (USA), N.A.*, 942 F.3d 480 (9th Cir. 2019).
- Collecting, using, and storing a person's biometric identifiers, *see Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019).

*See Phillips*, 74 F.4th at 993-94 (collecting cases). While the *Phillips* plaintiffs insisted that "the retention of illegally obtained records, without more, constitutes a concrete injury," *id*, this Court concluded otherwise: "[I]n none of these cases did we hold that the plaintiffs had standing due to the retention of records alone." *Id.* at 994. Instead, "where we have held that the retention of illegally obtained records resulted in a concrete injury, we have always identified ***something beyond retention alone*** that resulted in an injury of the sort recognized by the Supreme Court, such as a material

risk of future tangible harm, a violation of the common law right to privacy, or a cognizable constitutional violation." *Id.* (emphasis added).

Twitter has not, and cannot, carry its burden to show that its wrongful act of procuring Mogan's cell phone number—in violation of a Washington state consumer protection statute—creates such a type of additional harm.

Twitter even admits that, unlike the kinds of information in which an individual has a privacy interest—such as those identified in *Phillips*—a cell number is essentially public. Opposition at 60. Thus, there is no allegation in the complaint that private information was disclosed to any third party. Both because it was not private and because it was never disclosed, the information that Twitter unlawfully obtained did not result in a concrete injury that would support Article III standing.

### B. Twitter Failed To Show A Material Risk Of Future Tangible Harm.

Of course, even if there was no allegation of past concrete harm, Article III standing might arise if the complaint alleged the likelihood of *future* harm. Here too Twitter failed to carry its burden to show that its wrongful collection and retention of Morgan's cell phone number creates a material risk of future tangible harm. Morgan only claims that Twitter procured his cell phone number using false or deceptive means. Twitter's action, which occurred at a single moment in the past (just as it did for each class member), is not continuous or ongoing, and Twitter made no attempt to show otherwise. As detailed above, Morgan has completely abandoned any claim of potential future harm Twitter might cause Morgan due to its past wrongful conduct. Morgan's abandonment of his sales claim has resolved—in Twitter's favor—any possible issue of future harm.

### C.  Twitter Failed To Show A Violation Of The Common Law Right To Privacy.

Twitter and the court below consistently characterized the statute's prohibition against unlawful procurement of telephone records as an effort to protect individual privacy. But, as the Supreme Court recognized in *TransUnion*, this is an instance in which the Legislature created a protectable interest and individual cause of action—akin to a private attorney general statute—to deter misuse of information that is not afforded common law privacy protections. To successfully analogize the procurement of telephone records to common law invasions of privacy, Twitter must identify a privacy interest, the invasion of which would trigger a common law right of action. Twitter did not, and cannot. Although state law protects Morgan's interest in not having his cell phone number taken by false or deceptive means, it is in no way comparable to the exposure of private information that would be offensive to a reasonable person. In fact, even if Twitter had attempted such a showing, it would be foreclosed by this Court's precedents establishing a threshold for concrete injury.

Here, as in prior Ninth Circuit cases, "the essential inquiry is whether collection of [Morgan's cell phone number] violates a subjective expectation of privacy that society recognizes as reasonable. Answering that question implicates the intersection of two lines of cases, both of which inform an understanding of the privacy interests at stake. … The second concerns the line between what a person keeps to himself and *what he shares with others*, implicating the so-called third-party doctrine. That doctrine teaches that a person has no legitimate expectation of privacy in information he *voluntarily turns over to third parties*." *Sanchez v. Los Angeles*

*Dep't of Transportation*, 39 F.4th 548, 555 (9th Cir. 2022) (cleaned up, emphasis added). But Morgan never alleged that he has ***not*** disclosed his cell phone number to others, and Twitter has never attempted to show that Morgan or the other members of the class suffered a common law privacy invasion from the fact that Twitter has wrongfully taken possession of that information. The violation of RCW 9.26A.140 does not arise from the fact that information that should be kept private is now in the possession of a stranger. Instead, it arises because Twitter made endless promises that it would protect cell numbers and other personal information, including assurances to users that phone numbers provided to Twitter would be used solely for identification purposes. Twitter refused to take any promised steps to protect the information, but instead used it for its own commercial advantage, all the while repeating its empty promises.

And of course, simple common sense would reveal the absurdity of Twitter's argument, accepted by the Court below, that the unlawful procurement of cell numbers was analogous to a common law invasion of privacy: a cell number is only useful to the owner of that number if he or she regularly discloses it to other people.[4]

---

[4] Indeed, as to Morgan himself, this Court can take judicial notice of the fact that Morgan has disclosed his cell phone number to the general public when standing for public office. *See, e.g.*, https://tinyurl.com/5xe886b9 at 11 (Thurston County 2010 Top-2 Primary Election Voters' Pamphlet); https://tinyurl.com/bds3dpjd at 7 (Thurston County 2010 General Election Local Voters' Pamphlet); https://tinyurl.com/mcawpzf7 at 6 (Thurston County 2011 Primary Election Local Voters' Pamphlet); https://tinyurl.com/fhd48xtj at 18 (Thurston County

Thus, while RCW 9.26A.140 makes Twitter liable to Morgan and every class member for procuring those numbers using false and deceptive means, its conduct did not "violate[] a subjective expectation of privacy that society recognizes as reasonable." *Sanchez*, 39 F.4th at 555. Instead, although Washington recognizes a common law right to privacy, it only protects the privacy of a person's information concerning those "phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends." *Cowles Publ'g Co. v. State Patrol*, 109 Wash. 2d 712, 721 (1988) (quoting Restatement (Second) of Torts § 652D cmt. b, at 386). Twitter admits that disclosure of a cell number, by itself, does not implicate privacy concerns, because a cell number is essentially public. Opposition at 60. Twitter cannot show that its act of wrongfully procuring Morgan's cell phone number violated Washington common law privacy rights.

This Court's recent decision in *Phillips* followed this same reasoning, citing the same section of the Restatement earlier adopted by the Washington Supreme Court as Washington's common law. The *Phillips* court found no Article III concrete harm because the "plaintiffs do not show that the type of information contained in the records—names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations—is so sensitive that another's access to that information 'would be highly offensive to a reasonable

---

2011 General Election Local Voters' Pamphlet); https://tinyurl.com/ykcbmyxm at 30 (Thurston County 2015 General Election Local Voters' Pamphlet).

person,' Restatement (Second) of Torts § 652B, or otherwise gives rise to reputational harm or injury to privacy interests. A person's 'name, address, date and place of birth, place of employment, ... and social security number' are not 'generally considered 'private.'" *Phillips*, 74 F.4th at 995–96 (citing *Russell v. Gregoire*, 124 F.3d 1079, 1094 (9th Cir. 1997) for the principle that neither Washington state nor federal constitutional law recognize a right to privacy in information "already fully available to the public …"). Twitter cannot carry its burden to show that its wrongful conduct caused an Article III cognizable harm of invasion of privacy.

### D. Twitter Failed To Show A Cognizable Constitutional Violation.

"A threshold requirement of any constitutional claim is the presence of state action." *Roberts v. AT&T Mobility LLC*, 877 F.3d 833, 837 (9th Cir. 2017). Plainly, Morgan's allegations involve no state action. Twitter cannot maintain federal jurisdiction based on this factor.

### E. Courts Routinely Distinguish Between Taking And Selling Data Protected By Mere Statute: The First Creates No Standing.

Following the Supreme Court's decision in *TransUnion*—which found standing when false statements were sent out to third parties but not when the same false statements were not disclosed—courts have routinely drawn an identical distinction for constitutional purposes. Article III standing depends on whether the defendants merely take statutorily protected data, or whether they monetize the same data. This distinction is recognized in cases arising under the Illinois Biometric Identification Privacy Act. *See, e.g.*, *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1246 (7th Cir. 2021) (no standing for an proposed class of person whose data was

collected but who alleged they "suffered no injury … other than statutory aggrievement); *Doe v. Apple*, 2023 WL 3301795 at *5 (S.D. Ill. May 8, 2023) (claim for collecting faceprints from photos remanded; claims for selling faceprints retained). Similarly, under the California Invasion of Privacy Act, courts have found a concrete harm in taking the types of information that would trigger common law privacy protections. *See, e.g.*, *A.S. v. SelectQuote Ins. Servs.*, No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850, at *8 (S.D. Cal. Aug. 19, 2024) (*TransUnion* concrete injury in the nature of invasion of privacy satisfied for allegations that defendant intercepted "name, date of birth, gender, email address, and health information"). Here, however, the allegations of wrongfully taking non-private data, even data that is protected under numerous state laws (like an unpublished cell phone number) does not alone create concrete harm.

## III.   Twitter Fails To Show It Timely Removed.

Despite its best efforts, Twitter cannot show that it timely removed this unique case, under this Court's long-standing precedents. It fails to meet its burden to show, as required, that its removal came within 30 days of learning that the case was removable. It can't show that, because it knew from the instant it received the complaint, that the Morgan was a member of the same class as alleged in *Gray*. Charged with "apply[ing] a reasonable amount of intelligence in ascertaining removability," *Kuxhausen v. BMW Financial Services NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (citation omitted), Twitter missed the deadline for removal—not because it didn't know the size of the class, but due to its counsel's (erroneous) assumption that state law was identical to federal law.

District courts in the Ninth Circuit have routinely relied on this Court's precedents to reject Twitter's argument that this Court eagerly blesses late removal based on a defendant's falsely claimed ignorance. For example, in *Davidson v. Constr. Teamsters Training & Upgrading Fund for S. California*, No. 2:24-CV-01324-AB-MAA, 2024 WL 1585510 (C.D. Cal. Apr. 11, 2024), the court remanded a federal question case for late removal: "Defendants appear to have already been privy to the relevant information" long before they removed, based on, *i.a.*, emails between counsel demonstrating that knowledge. And in *Hauffen v. Nissan N. Am., Inc.*, No. LA CV24-03727 JAK (AGRX), 2024 WL 3462347, at *1 (C.D. Cal. July 15, 2024), the court remanded a diversity claim for late removal based on its judicial notice of pleadings earlier filed in other cases. In *Hauffen*, the defendant removed late and claimed that the initial complaint and a subsequent discovery filing had been indeterminate, not triggering the thirty day removal deadline. The court rejected the argument, noting that the defendant had removed seven identical cases, all earlier filed and subject to judicial notice, based on receipt of the same document it now claimed was insufficient to reveal the removability of the case.

Courts in this circuit have also charged defendants with having the reasonable amount of intelligence to know the rough size of a class, where that knowledge is within its basic operational knowledge. "As an employer, Defendant can reasonably be expected to know roughly how many California drivers it employed over the past four years without investigating or examining its internal business records." *Kohrs v. Swift Transportation Co. of Arizona, LLC*, No. 2:24-CV-03570-SVW-MAA, 2024 WL 3462342, at *5 (C.D. Cal. July 18, 2024) (notice of appeal filed Aug 8. 2024).

Here, too, Twitter not only knew that the class members alleged a sufficiently numerous class, but also certainly already knew—without the need to investigate—that it had more than 1,000 Washington users in the alleged class. After all, its supposed 'investigation' revealed a class of at least 10,000 members.[5]

Here, just as in *Davidson*, the circumstances do not trigger the concerns of a 'mini trial' regarding defendant's subjective knowledge. No such mini trial is needed here, where a member of the same class, represented by the same counsel, filed the same complaint. This same defendant, represented by the same counsel, repeatedly argued that federal jurisdiction was proper as to the other class member's complaint, and immediately acknowledged its position as to the propriety of federal jurisdiction over this Complaint, as well. Twitter was privy to the relevant information, and had already exercised the required—and minimal—amount of intelligence to know that the case was removable. It removed late because of counsel's error regarding state law, not by dint of lack of knowledge of the class size or amount in controversy. If this Court endorses Twitter's falsely claimed ignorance, it opens the door to the very gamesmanship in removal that it has repeatedly decried.

## IV. Twitter Fails To Show That Washington Law Supports The Merits Decision Of The Court Below.

In his Opening Brief, Morgan showed that RCW 9.26A.140 is a typical Washington state consumer protection statute. Opening Brief at 32-34. He showed

---

[5] Its SEC filings suggest the class numbers around 1,000,000 users. Twitter plainly knew this, and knew that, no matter how much it has exaggerated user counts, its real number of users exceeded 1,000, exactly as alleged by class member Gray.

that the State Supreme Court requires that the statute be construed broadly to effect its remedial purpose. Opening Brief at 17-18. He showed that the construction of this statute—like any Washington statute—starts with the plain text. Opening Brief at 15-17. Here, the fundamental dispute between the parties is whether the term "telephone record," which is defined in the statute, includes a cell phone number. Morgan showed that the definition of "telephone record," found in RCW 9.26A.140(5)(b), by its plain text includes telephone numbers. Opening Brief at 34-37.

*First*, Morgan showed that the use of the two word phrase "relates to" incorporates the subject noun as well as other, related items. Opening Brief at 35-36. Thus, the phrase "information … that relates to the telephone number …" includes the telephone number as well as other, related information.

*Second*, Morgan showed that the caller ID exception within the definition of "telephone record" requires that telephone numbers are otherwise within the scope of the definition, or it would make no sense to exclude "information collected and retained by customers using caller identification …" Opening Brief at 37.

*Third*, Morgan showed that the conduct proscribed in the statute, that is, using "deceptive, or false means [to] obtain[] the telephone record of any resident of this state to whom the record pertains …" broadly bans procuring telephone numbers—the protected data—regardless of what person or entity is targeted by the deceptive conduct. Morgan showed that the statute is violated whether a wrongdoer

procures the protected record from the individual user or another source. Opening Brief at 33-35.[6]

Morgan also showed that, if the definition of "telephone record" contained any ambiguity, the first and typically only source for a Washington court to identify the legislature's intent is the final bill report. Opening Brief at 17. Morgan showed that not only the final bill report, but every single bill report that followed every version of the statute throughout its various amendments, stated that the statute protected telephone numbers, and specifically also identified "CPNI," or consumer proprietary network information, as a target of the statute's protections. Opening Brief at 41-42. Morgan showed that CPNI includes unlisted telephone numbers, and that cell phone numbers are, by default, unlisted and thus protected by the statute. *Id.*

Finally, Morgan showed that even as to unambiguous statutes, the Washington State Supreme Court commonly "cross-checks" its plain text statutory construction by confirming that the final bill report confirms its construction. Opening Brief at 17. Morgan challenged Twitter to identify a single Washington

---

[6] Twitter claims that Morgan has "conceded" the erroneous legal interpretation of the statute adopted at Twitter's urging by the court below, that the statute only bans "pretexting" and therefore the records in question must be in the possession of the telephone company when taken. Morgan plainly argued the opposite position, and in any event, this court reviews statutory construction *de novo*, with no deference to the position taken by the court below. Twitter, once again, proffers erroneous arguments regarding the basic operation of courts and parties' burdens because it lacks meritorious arguments on statutory construction.

statute that the Supreme Court has ever construed to have a meaning flatly contradicted by the final bill report.

Twitter fails to demonstrate that a court can reach its proposed construction by following Washington law. Instead, Twitter begins with its preferred outcome, and works backwards to try to fashion a suitable cloak for the conclusion it demands: of course this statute doesn't proscribe its years of misconduct through which it procured tens of thousands of user phone numbers for ad targeting. Twitter doesn't particularly care what words precede the judgment of dismissal, and therefore proposed two radically different but equally wrong methods of statutory construction. The court below adopted both.

Twitter's "sentence first; verdict afterwards" approach to statutory construction found fruit in the dicta accompanying the order denying Morgan's first motion to remand. Although the only questions before the court were timeliness of removal and Article III harm, the court's order characterized the statute just as Twitter proposed, using an approach to statutory construction unheard of in any jurisprudence, state or federal. The court followed Twitter's lead, and began construction by reviewing unusually obscure legislative history in order to presume that the statute only proscribed one specific type of conduct that a private party witness who testified in support of the bill identified as a concern. Without support in any statutory construction jurisprudence from the Washington Supreme Court or any other court, it looked even further afield, and characterized the Washington statute as enacting the policies of a different statute, enacted later in time, by the United States Congress. The proffered construction was not only irrelevant to the

substance of the decision in the remand order, it was also unrelated to the text of the statute. The Court even proffered its view that RCW 9.26A.140 did not create a private right of action, a view contradicted by the text which states that "a person who violates this section is subject to legal action …" including the $5,000 liquidated damages sought by Morgan. Twitter had proffered all these ideas—in defiance of the text of RCW 9.26A.140 and *any* permissible canon of statutory construction—because adopting them resulted in its preferred outcome of dismissal.

Morgan confronted the court with unassailable rebuttals: First, that's just not how statutory construction is done. Second, basic textual canons of statutory construction (recapitulated above) compelled the opposite conclusion—or at least made the opposite conclusion sufficiently reasonable to fall within Washington courts' broad construction of remedial statutes.

Third, Morgan showed that, after electing to review legislative history, the court had selectively looked at the wrong parts. No jurisprudence, state or federal, supports giving the statute the meaning attributed to it by witness testimony, even that of a supportive witness. Instead, the Washington Supreme Court, as well as its intermediate appellate courts, routinely look to the Final Bill Report as the most important evidence of how legislators understood the text they enacted. Indeed, as Morgan showed, Washington courts look to the Final Bill Report as a cross check on construction even of unambiguous statutes, and do not appear to have ever once construed a statute as contradicting the Final Bill Report.

Intent on adopting a construction in its Final Order that still let Twitter off the hook, the court completely reversed course on its professed method of statutory

construction—yet reached exactly the same conclusion! Whatever conduct this statute proscribes, the Court said, it wasn't what Twitter had already admitted it had done. This time, instead of starting with legislative history and comparing RCW 9.26A.140 to other statutes, the court insisted that the intent of the legislature expressed in the plain text of the statute alone was so devoid of any possible ambiguity that the court did not need to look at any external source to confirm its meaning. And, lo and behold, that resulted in exactly the same outcome as predicted by the contrary approach relied on in dicta in its first order, when external sources were the primary source for discerning legislative intent: Twitter's conduct could not have violated the statute.

The Court's Final Order concluded that, for apparently the first time in its history, the Washington State Legislature had drafted and passed a statute that failed to accomplish the primary purpose identified in the bill reports as the Legislature's primary intent. In fact, according to the Court, the Legislature had failed so spectacularly that no person reading the text of the statute could possibly conclude that the Legislature had accomplished what it said it had set out to do. The Legislature said that "Various terms are defined, such as 'telephone record,' which includes telephone numbers …", as found in the Final Bill Report.[7] The House Bill report recognized that the statute proscribed "the practice of obtaining an

---

[7] *See* https://lawfilesext.leg.wa.gov/biennium/2005-06/Pdf/Bill%20Reports/Senate/6776-S.FBR.pdf?q=20241006184228

individual's personal information under false pretenses."[8] And of course, before the broadening amendment that expanded the scope of protection and added the private right of action, the first draft of the bill "prohibit[ed] the unauthorized sale of cell phone numbers …"[9] As noted above, after the bill was amended to include the enacted definition of "telephone records," the legislature understood that the definition still "includes telephone numbers …"[10] And yet, according to the district court's Final Order, every single word of this was wrong. The Legislature so thoroughly dropped the ball that no person reading the enacted statutory definition could have even an instant's doubt: the Legislature completely failed to protect the one thing it has set out to protect from the first draft of the statute. Although it had plainly read the legislative history before drafting the Final Order, the Court below concluded that the Legislature's stunning failure in drafting the statutory text left no need to even glance at the legislative history with which the Court had started its initial review of the statute. The conclusion was the same: Twitter wins.

Needless to say, neither approach taken by the Court below accurately reflects either proper modes of statutory construction or the legislature's intent, as discerned from the text of the statute alone, or discerned with the aid of typical and permissible secondary sources. And to this Court, try as it might, Twitter cannot proffer a

---

[8] *See* https://lawfilesext.leg.wa.gov/biennium/2005-06/Pdf/Bill%20Reports/House/6776-S.HBR.pdf?q=20241006184228

[9] *See* https://lawfilesext.leg.wa.gov/biennium/2005-06/Pdf/Bills/Senate%20Bills/6776.pdf?q=20241006184228.

[10] See Final Bill Report, n. 7 *supra*.

permissible method of statutory construction that yields the outcome it so desperately wants. The Court below erred by following Twitter's lead. Nothing in Twitter's Opposition shows that a different, permissible approach of applying standard canons of construction would yield its preferred result. Instead, as Morgan showed, this remedial statute, broadly construed, fulfills the Legislature's intent of protecting, among other records, Morgan's cell phone number.

Morgan also conclusively demonstrated that his claim survives by pleading that Twitter violated the statute by false or deceptive means, and did not—and need not—plead fraud. Morgan showed that this statute, like other Washington consumer protections statutes, is violated by conduct with the capacity to deceive a substantial portion of the public. Morgan showed that pleading a violation the statute ***does not*** require pleading fraud under Rule 9(b), but that imposing such a standard—contrary to state and federal courts' pleading standards under the Washington Consumer Protection Act, as an example—reads two thirds of the banned conduct out of the statute. Opening Brief at 37-40. Twitter's arguments concerning the fraud pleading standard are bootstrapping: the statute uses the word, but the FAC doesn't attempt to meet the federal standard, therefore the FAC must be dismissed for failing to meet an (inapplicable) standard because it "sounds in fraud" by never once pleading fraud or relying on fraud or having anything at all to do with fraud.[11]

---

[11] Notably, Twitter here again showed that the legislative history is, for Twitter, useful when it can be expurgated to support its position but should be hidden away when it compels recovery for Morgan. In its briefs to the court below, Twitter contended that all suits under RCW 9.26A.140 must plead fraud because the

No. As Morgan showed, this statute mimics other Washington state consumer protection statutes, most notably the Consumer Protection Act. Opening Brief at 39-40. That statute, like RCW 9.26A.140, prohibits deceptive acts, and Washington courts, in decades of decisions followed by federal courts, include under that rubric acts with the potential to deceive a substantial portion of the public. Utterly antithetical to fraud pleading, a Washington plaintiff may pursue recovery for a deceptive act without ever showing that he, himself, was deceived. For this statute, just like the CPA, fraud pleading standards are an utterly irrelevant sideshow.

## V. Conclusion.

This Court, like the court below, lacks constitutional authority to proceed. That authority is not resuscitated by Twitter's ad hominem attacks on Morgan. Indeed, Morgan, just like the plaintiffs in *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, is fully entitled to plead in a way that avoids alleging a case or controversy that would trigger Article III jurisdiction. Twitter has never demonstrated that its wrongful act of procuring Morgan's unlisted, statutorily protected, CPNI cell phone number—that he willingly disclosed to Twitter subject to its false and deceptive

---

House Bill Report noted that the statute allowed recovery against those who committed a violation with fraud. *See* 2-ER-180. Of course, the House Bill report didn't say "only" fraud. It doesn't contradict or amend the statute that allows recovery for false or deceptive means, and the full legislative history—which the court below reviewed just as thoroughly as Twitter reviewed it—compels the conclusion that Morgan pled a valid claim under the statute. This court should welcome Twitter's invitation to review the legislative history, especially including the Final Bill Report.

means for procuring that consent—caused an Article III concrete harm. As such, Twitter fails to show this Court's subject matter jurisdiction. Twitter also fails to show that its error in comprehension of Washington Superior Court Civil Rule 4 can be waved away by its late-claimed pretend ignorance of the amount in controversy, the flimsy basis on which it asserts a right to remove 49 days after the case was initiated.

Finally, should the Court reach the merits, Twitter fails to show that this consumer protection statue means anything more narrow than its literal text: Twitter cannot use false or deceptive means to procure a telephone records, which includes a cell phone number, from any Washington person. The FAC alleges that it did so, and Morgan must be permitted to proceed on behalf of the proposed class.

October 7, 2024.

Ard Law Group PLLC


By:     /s/ Joel B. Ard

        Joel B. Ard, WSBA # 40104
        Ard Law Group PLLC
        P.O. Box 11633
        Bainbridge Island, WA 98110
        206.701.9243
        Joel@Ard.law
        Attorneys For Plaintiff-Appellant


        Albrecht Law PLLC


By:     /s/ David K. DeWolf

        David K. DeWolf, WSBA #10875
        5105 E 3rd Ave., Suite 101
        Spokane Valley, WA 99212
        (509) 495-1246
        Attorneys For Plaintiff-Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 23-3764

I am the attorney or self-represented party.

**This brief contains** | 6,430 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Joel B. Ard | **Date** | October 7, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/22*